1
2
3
4

Stephen C. Hinze (Bar No. 131787)
**STEPHEN C. HINZE, ATTORNEY AT LAW, A PC**
217 Civic Center Drive, Suite 10
Vista, California 92084
Telephone: (760) 689-0705
Facsimile:   (760) 454-2427

5
6

*Proposed Attorneys for Debtor and Debtor-in-Possession*
Core Supplement Technology, Inc.

7

8

9

10

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

In re

CORE SUPPLEMENT TECHNOLOGY, INC.

               Debtor and
               Debtor-in-Possession.

Case No. 17-06078-MM11

Chapter 11

STIPULATION REGARDING INTERIM
USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION

Date:      [_____, 2017]
Time:
Ctrm.:

20

21

22

23

24

25

26

     This Stipulation Regarding Interim Use of Cash Collateral and Adequate Protection (the "Stipulation") is entered into by and between Core Supplement Technology, Inc. ("Debtor"), on the one hand, and Bank of America, N.A. ("Bank") and Banc of America Leasing & Capital, LLC ("BofA Leasing" together with Bank shall be referred to individually and collectively as "Secured Party"), on the other hand, with reference to the following facts:

27

28

## RECITALS

A. <u>Petition</u>. On October 3, 2017 (the "Petition Date"), Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of California (the "Court").

B. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the bankruptcy case, and the parties and property affected thereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. This proceeding constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for this bankruptcy case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Bank Obligations</u>.

 1. As of the Petition Date, Debtor was indebted to Bank in an amount not less than $1,475,089.16 comprised of outstanding principal of $1,474,700.00, and accrued interest of $389.16. This sum together with other recoverable fees and costs and attorneys' fees are due and payable to Bank (the "Prepetition Loan Indebtedness").

 2. The Prepetition Loan Indebtedness is evidenced by, among other things: (a) a Loan Agreement, dated October 11, 2016; (b) Security Agreement, dated October 11, 2016; (c) a UCC-1 financing statement; and (d) Waiver Agreement, dated May 25, 2017.

 3. By virtue of the foregoing, Bank holds a first priority lien on substantially all assets (the "Prepetition Bank Collateral") of Debtor. All of Debtor's cash, proceeds and product generated by the Prepetition Collateral is "Cash Collateral" of Bank within the meaning of Bankruptcy Code Section 363(a).

D. <u>BofA Leasing Obligations</u>.

 1. As of the Petition Date, Debtor was indebted to BofA Leasing in an amount not less than $326,065.98 comprised of outstanding principal of $311,957.07, accrued interest of $1,067.05, recoverable fees of $13,041.86. This sum together with other recoverable fees and costs and attorneys' fees are due and payable to BofA Leasing (the "Prepetition Lease

2

1  Indebtedness" together with the Prepetition Loan Indebtedness shall be referred to collectively as

2  the "Prepetition Indebtedness").[1]

3          2.      The Prepetition Lease Indebtedness is evidenced by, among other things: (a)

4  a Master Loan and Security Agreement No. 31927-70000 dated October 12, 2016; (b) Equipment

5  Security Note No. 001, dated October 12, 2016[2]; (c) Equipment Security Note No. 002, dated

6  December 22, 2016; and (d) UCC-1 financing statements.

7          3.      By virtue of the foregoing, BofA Leasing holds a first priority lien on

8  certain equipment and related items as more particularly described in the Loan Documents (the

9  "Prepetition Leasing Collateral" together with Prepetition Bank Collateral shall be referred to

10  collectively as the "Prepetition Collateral") of Debtor. All of Debtor's cash, proceeds and product

11  generated by the Prepetition Collateral is "Cash Collateral" of BofA Leasing within the meaning

12  of Bankruptcy Code Section 363(a).

13          E.      <u>Budgeted Use of Cash Collateral</u>. Debtor has requested, and subject to Court

14  approval, Secured Party has consented to, Debtor's use of Cash Collateral for purposes described

15  in the Budget attached hereto as <u>Exhibit A</u> (subject to the terms of this Stipulation), from the date

16  of this Stipulation through December 29, 2017.

17          F.      NOW, THEREFORE, based upon the foregoing and good cause appearing therefor,

18  IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED by and among Debtor

19  and Bank as follows:

20                            **STIPULATION**

21          1.      <u>Incorporation</u>. The recitals contained above are incorporated herein by this

22  reference.

23          2.      <u>Indebtedness</u>. Debtor hereby acknowledges and agrees that Debtor is liable to

24  Secured Party in the amount of the Prepetition Indebtedness.

25  _____

26  [1]    The documents and agreements evidencing the Prepetition Indebtedness shall be referred to collectively as the "Loan Documents."

27  [2]    The first page of the note was replaced to correct the commencement date of the "Initial Payment" as set forth in Section 2 therein.

28

STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL

3.     Validity of Claims.  Debtor acknowledges and agrees to the following:

a.     The Prepetition Indebtedness constitutes an allowed claim under the Bankruptcy Code.

b.     The Prepetition Bank Indebtedness is secured by a valid, perfected and indefeasible first priority security interest in the Prepetition Bank Collateral.

c.     The Prepetition Lease Indebtedness is secured by a valid, perfected and indefeasible first priority security interest in the Prepetition Lease Collateral.

4.     Collection and Use of Cash Collateral.

a.     "Cash Collateral" Defined.  "Cash Collateral" includes, without limitation, all cash, negotiable instruments, documents of title, securities, chattel paper, deposit accounts, or other cash equivalents whenever acquired in which Debtor has an interest, and includes any and all proceeds, products, offspring, rents or profits of property and all fees, charges, accounts or other payments on the Prepetition Collateral or otherwise generated by or derived from the Prepetition Collateral (collectively, "Cash Collateral").

b.     Permitted Use of Cash Collateral.  Subject to the terms of this Stipulation and entry of an order approving this Stipulation (the "Interim Order"), Secured Party hereby consents to Debtor's use of Cash Collateral, solely for the purposes and in the total amounts set forth in the Budget (the "Budget") attached hereto as Exhibit A and incorporated by this reference; provided, however, Debtor is further authorized to use Cash Collateral not to exceed the amounts set forth in the Budget by more than twenty five (25%) solely with respect to the line item expense category delineated as "Outsourcing."   Debtor and Secured Party may agree in writing to any amendments or modifications to the Budget or Budget Period (defined below) subject to further order of the Bankruptcy Court.

c.     Budget Period for Cash Collateral.  Debtor may use the Cash Collateral up to the amount and for the specific purposes set forth in the Budget for the period from the date of this Stipulation through December 29, 2017, or such later date as may be agreed to pursuant to a written stipulation entered into by and between Secured Party and Debtor and approved by the

4

1   Court without the need for further hearing (the "Budget Period").

2        5.    <u>Adequate Protection Payments to Secured Party</u>. As and for adequate protection of

3   Secured Party's interest in and consent to use of the Cash Collateral and as security for Debtor's

4   performance under this Stipulation, Debtor shall make monthly payments to Bank in the amount

5   of $5,837.36 and to BofA Leasing in the aggregate amount of $6,629.52 with such payments to be

6   made commencing on November 1, 2017 and on the first day of each successive month (the

7   "Adequate Protection Payments").

8        6.    <u>Further Adequate Protection of Bank's Interests</u>. As protection for the interests of

9   Secured Party, in compliance with section 506(b) of the Bankruptcy Code, and in consideration of

10   consent to Debtor's use of the Cash Collateral as set forth in this Stipulation:

11           a.    Secured Party is hereby granted a replacement lien (the "Replacement Lien")

12   on the rents, proceeds and profits of the Prepetition Collateral (collectively, the "Post-Petition

13   Collateral"), with such Replacement Lien being a perfected security interest in and to the Post-

14   petition Collateral having the same extent, validity and priority Secured Party had in the

15   Prepetition Collateral on the Petition Date. The entry of an Interim Order shall constitute

16   sufficient and, conclusive evidence of the granting, attachment, priority, perfection, and validity of

17   the Replacement Lien, effective as of the date and time of entry of such Interim Order, without

18   any further action by Debtor and Secured Party and without the execution, filing, or recording of

19   any financing statements, security agreements, deeds of trust or other documents. The

20   Replacement Lien shall not extend to claims or causes of action possessed by Debtor's bankruptcy

21   estate under 11 U.S.C. §§ 544, 545, 547, 548, 549, 550, 551, 553(b), 723(b), or 724(a), or the

22   proceeds therefrom.

23           b.    Under Section 507(b) of the Bankruptcy Code, if the protection granted

24   above is insufficient to satisfy in full the claims of Secured Party, Secured Party will be granted an

25   allowed claim under Section 503(b) of the Bankruptcy Code in the amount of any such

26   insufficiency. Such claim shall have the super-priority provided by Section 507(b) of the

27   Bankruptcy Code, and no claim for costs or expenses of administration that have been or may be

28

1  incurred in this case, any conversion of this case to a case under chapter 7 of the Bankruptcy Code,

2  or otherwise, and no priority claims, are or will be senior to or on a parity with any such claim of

3  Secured Party, subject only to fees payable to the U.S. Trustee under 28 U.S.C. § 1930 and fees or

4  costs owing to the Clerk of the Court.

5         7.    Access to Collateral; Reporting.  In order to provide further adequate protection to

6  Secured Party for Debtor's use of Cash Collateral, Debtor:

7             a.    Shall permit Secured Party and its agents to have access to inspect the

8             Prepetition Collateral, on 48 hours' notice to Debtor;

9             b.    Shall keep the Prepetition Collateral insured as required by the Loan

10             Documents and United States Trustee Guidelines;

11             c.    Debtor shall continue to provide reporting as required under the Loan

12             Documents; and

13             d.    Debtor shall provide reporting on a monthly basis commencing on

14             November 10, 2017 for the preceding month and on the 10th day of each successive month

15             for each preceding month containing at least the following information: **(i)** gross monthly

16             revenues; **(ii)** accounts receivable; **(iii)** monthly expenses by line-item; and **(iv)** a variance

17             report reflecting a line-item comparison of: (x) actual revenues against projected revenues;

18             (y) actual expenses against budgeted expenses.

19         8.    No Implied Authorization.  Except for transactions in the ordinary course of

20  business or as authorized by the Court, Debtor shall not sell, transfer, lease, encumber, or

21  otherwise dispose of any of the property of the estate without the prior written consent of Secured

22  Party, and no such consent shall ever be implied from any other action, inaction, or acquiescence

23  by Bank.

24         9.    Events of Default.  The occurrence of anyone or more of the following events shall

25  constitute an "Event of Default" under this Stipulation: (i) Debtor fails to perform any of its

26  obligations in accordance with the terms hereof or otherwise defaults hereunder or breaches any

27  provision hereof, including (A) the use and disbursement of Cash Collateral except as expressly

28

STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL

1   permitted hereunder; (B) the actual expenditure of Cash Collateral by Debtor in excess of the

2   budgeted expenditure in the Budget, without the written consent of Secured Party or order of the

3   Court; (C) the failure to provide any report, document, or information to Secured Party as required

4   hereby; and (D) the failure to make any payment to Secured Party as required hereby; (ii) the

5   bankruptcy case is converted to a case under Chapter 7 or is dismissed; (iii) appointment of a

6   trustee in this bankruptcy case; (iv) the Interim Order or this Stipulation is reversed, vacated,

7   stayed, amended, or supplemented without the consent of Bank; (v) relief from the automatic stay

8   is granted to any party to permit the exercise of remedies with respect to any property of Debtor's

9   estate; or (vi) the granting by Debtor in favor of any party other than Secured Party of a security

10   interest in or lien upon any property of Debtor or Debtor's estate or a claim against Debtor having

11   priority senior or *pari passu* with the security interests, liens or claims in favor of Secured Party,

12   except to the extent that such party had a security interest in or lien upon property of Debtor on the

13   Petition Date which had priority senior or *pari passu* with the security interests, liens or claims of

14   Secured Party existing on the Petition Date.

15       10.   <u>Remedies Upon Default</u>. If an Event of Default occurs under this Stipulation,

16   Secured Party shall give written notice via facsimile or overnight express of any such default to

17   Debtor's counsel of record in the bankruptcy case by electronic mail or facsimile (the "Default

18   Notice"). Upon receipt of such notice, Debtor shall have three (3) business days to cure the Event

19   of Default.

20       11.   <u>Effect of Default</u>. Upon the expiration of the third business day after delivery of

21   the Default Notice, if Debtor has not (i) cured the Event of Default that is the subject of the

22   Default Notice, or (ii) noticed an expedited hearing before the Court with respect to the Event of

23   Default that is the subject of the Default Notice, Debtor's rights to use Cash Collateral shall

24   immediately cease without further notice. If the Event of Default is not cured, Secured Party may,

25   among other things, file a motion for relief from the automatic stay or a motion to dismiss or

26   convert the case; and, if a hearing is requested or required, such motion may be set for hearing on

27   shortened notice on 7 calendar days' notice to Debtor, Debtor's counsel of record, and such other

28

STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL

1  parties required to receive notice under Federal Rule of Bankruptcy Procedure 4001(a)(1). Debtor

2  shall continue to hold and segregate all Cash Collateral in trust for Secured Party.

3       12. <u>Right to Terminate Use of Cash Collateral</u>. Regardless of the occurrence of any

4  Event of Default, Secured Party may move the Court for an order terminating Debtor's right to use

5  Cash Collateral for any appropriate reason, including, but not limited to, lack of adequate

6  protection, relief from the automatic stay being granted to any party to permit the exercise of

7  remedies with respect to any property of Debtor's estate, failure to obtain Court approval of the

8  terms of this Stipulation, and/or the occurrence of one of the events set forth in <u>paragraph 9</u> hereof.

9       13. <u>Section 364(e) of the Bankruptcy Code</u>. Having been found to have acted in good

10  faith in agreeing to the terms of this Stipulation, Secured Party shall be entitled to the full

11  protection of Section 364(e) of the Bankruptcy Code with respect to Debtor's grant of the

12  Replacement Lien created and authorized by this Stipulation in the event that this Stipulation or

13  any authorization contained in this Stipulation is stayed, vacated, reversed, or modified on appeal.

14       14. <u>Debtor's Waivers</u>. Solely during the operative period of this Stipulation, Debtor

15  waives any rights that it may have to (a) use Cash Collateral pursuant to section 363 of the

16  Bankruptcy Code during such operative period on terms other than those set forth in this

17  Stipulation and Interim Order, except pursuant to further order of the Court; (b) incur financing or

18  indebtedness during such operative period from any party other than Secured Party that includes

19  the granting by Debtor of liens, claims or interests in favor of such other party that are senior or

20  *pari passu* with the liens, claims and interests in favor of Secured Party; or (c) object to, contest or

21  seek to reduce any claim or lien in favor of Secured Party.

22       15. <u>506(c) Waiver</u>. Solely during the operative period of this Stipulation, Debtor shall

23  not seek any right to surcharge Bank under Section 506(c) of the Bankruptcy Code or other

24  applicable law for any fees or compensation to attorneys or other professionals employed by

25  Debtor.

26       16. <u>Reservation of Rights</u>. This Stipulation and the Interim Order do not prejudice the

27  right of Secured Party to seek relief from the automatic stay of Section 362 of the Bankruptcy

28

8

STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL

1  Code, or any other relief in this case, including demands for further adequate protection,

2  objections and claims relating to motions for adequate protection, or the use, sale, or other

3  disposition of the Cash Collateral or the Post-Petition Collateral. This Stipulation is also without

4  prejudice to the rights of any party to oppose any such relief requested. Except as otherwise

5  expressly set forth in this Stipulation, this Stipulation is not a waiver or modification of any of the

6  rights of Secured Party, including by way of example and without limitation all rights set forth in

7  the Loan Documents, and Secured Party does not have any obligation or duty to any other entity to

8  exercise any of its rights, remedies, claims, powers, benefits, and privileges. Delay in or failure to

9  exercise any of its rights, remedies, claims, powers, benefits, or privileges does not constitute a

10  waiver, nor subject Secured Party to any liability to any entity, and no other entity may rely upon

11  any such delay or failure or in any way seek to assert a defense to any obligation owing based on

12  any such delay or failure. By entering into this Stipulation, neither Secured Party nor Debtor

13  makes any admission regarding the Loan Documents or its rights thereunder and reserves all rights

14  and remedies under Section 365 or any other applicable section of the Bankruptcy Code.

15      17.    Modification of Stipulation and Effect of Modification of Order. The terms and

16  conditions set forth in this Stipulation may not be altered, modified, or affected without the prior

17  written consent of Debtor and Secured Party. If any or all of the provisions of the Interim Order

18  are hereafter modified, vacated, terminated, amended or stayed, the consent to Debtor's use of

19  Cash Collateral shall cease immediately thereupon; provided, however, that no such occurrence

20  shall affect, limit or modify (a) the validity of any claim for any amounts of Cash Collateral used

21  pursuant to this Stipulation and the Interim Order, or (b) the validity, enforceability, priority or

22  perfection of any lien or security interest granted under this Stipulation and the Interim Order.

23      18.    Court Approval. This Stipulation is subject to approval of the Court pursuant to

24  Federal Rule of Bankruptcy Procedure 4001(d).

25      19.    Unenforceability. If the Court does not approve this Stipulation for any reason,

26  then this Stipulation has no effect, and neither the Stipulation nor any action or procedure taken,

27  nor any statement made, in connection with the negotiation, preparation, formulation or seeking

28

9

1   approval of this Stipulation may be referred to by any entity in connection with any proceeding or

2   action, whether in this case or elsewhere.

3        20.   Consent and Mutual Agreement.  Whenever any action may be taken under this

4   Stipulation upon the prior written consent of Bank or the prior mutual written agreement of the

5   parties, the action may be taken without any further notice or action or order of the Court.

6        21.   Survival of Obligations.  The provisions of this Stipulation, the Prior Interim

7   Stipulation, and any actions taken in accordance with this Stipulation shall survive entry of any

8   order that may be entered: (a) confirming any plan in any case of any Debtor; (b) converting this

9   Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; or (c) dismissing this case.

10  Unless otherwise ordered by the Court, the claims and liens on the Cash Collateral and the Post-

11  Petition Collateral continue in full force and effect and maintain their priority until all the

12  obligations owed under the terms of the Loan Documents and this Stipulation are paid in full.

13       22.   Counterpart.  This Stipulation may be executed in counterparts, each of which,

14  when executed and delivered, shall be deemed an original, but all such counterparts together shall

15  constitute but one and the same instrument.

16       23.   Notice.  Debtor shall, within one (1) business day following entry by this Court of

17  this Stipulation and Interim Order, mail copies hereof, to the U.S. Trustee, Debtor, counsel to

18  Secured Party and to the entities listed on Debtor's list of twenty (20) largest non-insider

19  unsecured creditors, all parties who appear or otherwise responded to the relief requested herein,

20  and any other party that has filed a special request for notice with this Court and served such

21  request upon Debtor's counsel.

22

23                         *[Signatures Continued On Next Page]*

24

25

26

27

28

STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL

| | |
|---|---|
| 1 | SO STIPULATED |
| 2 | DATED: October 18, 2017 |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | DATED: October 19, 2017 |

SO STIPULATED

DATED: October 18, 2017                    HEMAR, ROUSSO & HEALD, LLP

BY: _____
        WAYNE R. TERRY
        J. ALEXANDRA RHIM
Attorneys for Bank of America, N.A. and
Banc of America Leasing & Capital, LLC

DATED: October 19, 2017                    STEPHEN C. HINZE, ATTORNEY AT LAW, A PC

BY: _____
        STEPHEN C. HINZE
Proposed Attorneys for Debtor and Debtor-in-
possession

STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL

Exhibit A

# EXHIBIT A

## In Re Core Supplement Technology, Inc., 17-06078-11
## ESTIMATED AND PROPOSED BUDGET

### Estimated Monthly Sales

**Total Estimated Monthly Revenue**          $700,000.00

### Estimated Expenses

|  |  |  |
|---|---|---:|
|  | Rent 4645 North Avenue | $16,367.00 |
|  | Rent 4665 North Avenue | $22,441.00 |
|  | Raw Materials | $40,000.00 |
|  | Packaging materials | $20,000.00 |
|  | Outsourcing | $65,000.00 |
|  | Insurance Worker's Comp | $5,142.00 |
|  | Insurance Product Liability | $2,166.82 |
|  | Insurance General Liability | $1,093.62 |
|  | Auto Insurance | $612.67 |
|  | SDG&E | $6,300.00 |
|  | SDG&E | $900.00 |
|  | Payroll | $144,274.97 |
|  | Payroll Taxes | $13,000.00 |
|  | Temporary Employee Services | $1,900.00 |
|  | Medical Insurance ER | $4,600.00 |
|  | Life Insurance | $60.00 |
|  | Phone | $250.00 |
|  | copier leases | $652.97 |
|  | Internet svcs & Hosting | $700.00 |
|  | bottled water | $300.00 |
|  | water Bill | $950.00 |
|  | Trash | $3,600.00 |
|  | Uniforms for Employee's | $1,800.00 |
| Berlin | Equipment leases | $4,173.53 |
| Ally Truck | Equipment leases | $480.69 |
| LCA | Equipment leases | $1,278.84 |
| Marlin | Equipment leases | $1,441.99 |
| Thermo Fischer | Equipment leases | $563.76 |
| Ascentium | Equipment leases | $1,068.13 |
| LCA | Equipment leases | $2,395.44 |
| LCA | Equipment leases | $2,042.72 |
| Fin Pac | Equipment leases | $6,586.00 |
| BOA | Equipment leases | $2,663.57 |

| | | |
|---|---|---|
| BOA | Equipment leases | $3,792.35 |
| BOA | Interest on LOC | $5,837.36 |
| | Alarm services | $48.00 |
| | Shop Supplies | $2,000.00 |
| | Repair and Maintenance | $3,000.00 |
| | Testing Services | $27,000.00 |
| | Shipping and freight | $15,000.00 |
| | shipping supplies | $1,000.00 |
| | Pest control | $500.00 |
| | Office supplies | $400.00 |
| | Fuel for Trucks and Forklifts | $250.00 |
| | **Total Estimated Cost** | $433,633.43 |
| | Total Estimated Gross Income | $266,366.57 |