Stephen C. Hinze (State Bar No. 131787)
STEPHEN C. HINZE, ATTORNEY AT LAW
217 Civic Center Drive, Suite 10
Vista, CA 92084
Tel:  760-945-9353
Fax: 760-454-2427

Bankruptcy Counsel
for Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.: 17-06078-MM11 |
| CORE SUPPLEMENT TECHNOLOGY, INC., | Chapter 11 |
| Debtor and Debtor in Possession. | **DECLARATION OF RICHARD J. FEFERMAN IN SUPPORT OF MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING THE DEBTOR'S RETENTION OF RICHARD FEFERMAN AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR** |
| | Ctrm:    Dept. 1, Room 218<br>United States Bankruptcy Court<br>325 West "F" Street<br>San Diego, CA 92101-6991<br>Judge:    Hon. Margaret M. Mann |

I, Richard J. Feferman, declare and state as follows:

1.    The matters set forth herein are within my own personal knowledge, and, if called upon as a witness, I could and would competently testify thereto.

2.    I submit this Declaration in support of the Debtor's Motion for Entry of an Order, Pursuant to Sections 363 and 105(a) of the Bankruptcy Code, Authorizing and

Approving the Debtor's Retention of Richard J. Feferman as Chief Restructuring Officer of the Debtor ("Motion").[1]  A true and correct copy of the Engagement Agreement is attached hereto as Exhibit "1" and is incorporated herein by the reference.

3.      Corporate Recovery Associates, LLC (the "Firm" or "CRA") is a financial advisory services firm with extensive experience and expertise in Chapter 11 proceedings.  The Firm is regularly employed as a court-appointed financial advisor, liquidating agent, plan administrator or other fiduciary.  Based in San Diego, CRA provides consulting services nationwide in connection with complex commercial insolvency matters.

4.      I hold a BBA from Southern Methodist University, and am a Certified Insolvency and Restructuring Advisor (CIRA) and a Master Analyst in Financial Forensics (MAFF). I have more than 37 years' experience consulting on complex financial matters, including debt and financial restructuring, financial forensics, acquisition due diligence, litigation support, and the disposition of assets.  I have been the lead professional on numerous complex engagements, including engagements providing financial restructuring and reorganization services to companies in Chapter 11 cases, companies in out-of-court restructurings, and to creditors of companies in Chapter 11 cases.  I have assisted in the sale of assets pursuant to Section 363 of the Bankruptcy Code on numerous occasions.  A copy of my resume is attached as Exhibit "2" listing a representative sampling of Chapter 11 Bankruptcy cases in which I have been engaged.

5.      I have served as chief executive officer, chairman of the board of directors, court-appointed liquidating trustee, financial advisor, and various other fiduciary roles in Chapter 11 cases, both before and after plan confirmation.  I have extensive experience providing crisis management and financial restructuring services for operating companies and real estate clients.  I have substantial experience and

---

[1] Capitalized terms not otherwise defined herein will have the same definitions ascribed to them in the Motion.

knowledge regarding restructuring of complex loan transactions and disposition of operating companies and real estate projects.   A true and correct copy of my resume is attached as Exhibit "2" this Declaration.

6.    Since being retained by the Debtor, I have acquired substantial knowledge of the Debtor's financial affairs and business.  I am in the process of assisting the Debtor to effectuate a sale of substantially all of the Debtor's assets.    In my capacity as proposed CRO, I have provided and will continue to provide independent oversight over the Debtor and the Debtor's operations and the Debtor's efforts to sell its assets.

7.    As set forth in the Engagement Agreement, I will provide, among others, the following services to the Debtor:

a.  Manage the business and financial affairs of the Debtor;

b.  Direct all aspects of the sale proceedings of the assets of the Debtor and such other plans as may maximize the enterprise value of the Debtor. With respect to any sale of the assets of the Debtor, the CRO will handle all aspects of the sale proceedings in the Debtor's case, including the following:  marketing of the Debtor's assets; facilitating bidders due diligence; negotiations with any potential bidder for the Debtor's assets; evaluating any bid made for the Debtor's assets; conducting an auction for the sale of the Debtor's assets; and selecting, subject to the approval of the Bankruptcy Court, the successful bid(s) for the Debtor's assets;

c.  Supervise the administration of the Debtor's Chapter 11 case, including the preparation of the financial reporting required by the Office of the United States Trustee ("U.S. Trustee");

d.  Review claims asserted against the Debtor;

e.  Review and evaluate pleadings, financial reports and other documents filed by creditors or parties-in-interest in the Debtor's Chapter 11 case.

    f.   Appear in any proceedings or hearings in this Court, as appropriate;

    g.   If needed, the CRO shall assist the Debtor in the negotiation, formulation, confirmation, and implementation of a Chapter 11 plan;

    h.   Coordinate with the Debtor's counsel, and assist the Debtor's counsel, with respect to preparation of pleadings for proceedings in the Debtor's case;

    i.   Communicate with creditors; any committees; and with the other parties-in-interest in the case

    j.   Perform the services typical of a CRO in a Chapter 11 case, and such other services as may be mutually agreed upon by the Debtor and Corporate Recovery Associates, LLC.

8.    The Debtor and Corporate Recovery Associates, LLC have agreed that Corporate Recovery Associates, LLC will provide to the Debtor my services as CRO at the pleasure direction and control of the Board of Directors. No professional of Corporate Recovery Associates, LLC other than Alan Meyers and myself will perform any services for the Debtor, without further order of the Court authorizing the employment of such professional.

9.    The Debtor and Corporate Recovery Associates, LLC have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement contract (the "Fee Structure"):

    (a)  <u>Flat Rate and Hourly Rate</u>.  The Debtor has agreed to pay to CRA a nonrefundable monthly fee of $20,000.00 (a "Flat Rate") for the CRO's services. The Flat Rate fee will be prorated for any partial months based on the number of days in the prorated month. In addition, the Debtor has agreed to pay CRA an advance deposit of $20,000 to be applied to CRA's final bill, against which CRA may charge for any balance left unpaid for 15 days or more. CRA is granted

a security interest in the advance deposit.  The Debtor is obligated to restore the balance of this deposit to $20,000 at any time CRA utilizes these funds on behalf of the Debtor or its expenses. Additional limited services, (of no more than 20 hours per month) will be provided by financial analyst / CPA Alan Myers of CRA at his hourly rate of $240 per hour. Total billings of CRA personnel that are charged by the hour ("Hourly Rate") are subject to a $275 per hour blended rate cap on the aggregated billings at the end of the case ("Blended Hourly Rate Cap"). Without further Court order, Mr. Myers and Mr. Feferman are the only CRA personnel that will be rendering services on this matter.

(b)  CRA and the Corporation agree that, on the date that is sixty (60) days from the date of entry of the order appointing the CRO, they may revisit the compensation paid to CRA and if it appears to be advantageous to the Bankruptcy Estate, and approval by the Court if required, the CRO's compensation will move from the Flat Rate to his normal Hourly Rate effective ninety (90) days from the date of entry of the order appointing the CRO. To confirm, the aggregated compensation during the duration of the case billed by CRA on an Hourly Rate basis is subject to a $275 Blended Hourly Rate Cap.  Flat Rate Fees (the fees for the services of the CRO) are not subject to the Blended Hourly Rate Cap and are not considered in calculating the Blended Hourly Rate Cap.

(c)  Reimbursement of Expenses.  Corporate Recovery Associates, LLC will be reimbursed by the Debtor for any reasonable out-of-pocket expenses that I incur in connection with my services as CRO, such as reasonable travel expenses, computer research, messenger and telephone charges.

/ / /

393186-v1

10. Corporate Recovery Associates, LLC has conducted a conflicts check with respect to the Debtor's 20 largest unsecured creditors and the Debtor's secured creditors. The conflicts check indicates that Corporate Recovery Associates, LLC has never performed services for any of such creditors.

11. To the best of Corporate Recovery Associates, LLC's knowledge, neither Corporate Recovery Associates, LLC nor any of its professionals (i) was a creditor, an equity security holder, or an insider of the Debtor as of the Petition Date, or (ii) is or was, within two (2) years before the Petition Date, a director, officer or employee of the Debtor.

12. Corporate Recovery Associates, LLC believes that it does not hold or represent any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with or interest in the Debtor or for any other reason. I believe that Corporate Recovery Associates, LLC has no conflict that would impair my ability to perform properly services as CRO for the Debtor.

13. Except as set forth immediately below, to the best of Corporate Recovery Associates, LLC's knowledge, Corporate Recovery Associates, LLC has no connection with any creditor of the Debtor or with any other party-in-interest in the Debtor's case.

      a. Corporate Recovery Associates, LLC and/or professionals of Corporate Recovery Associates, LLC may have had and may have business dealings or other involvement with creditors of the Debtor, but, to the best of Corporate Recovery Associates, LLC's knowledge, Corporate Recovery Associates, LLC never has performed any services for such creditors with respect to the Debtor.

      b. I, or other employees of CRA, may own stock, either directly or indirectly through mutual funds, in publicly traded companies which are creditors listed herein, or are affiliated of creditors listed

herein, none of which interests is more than 5% ownership interest. CRA, I or other employees of CRA may have, or may have had, personal accounts with various creditors listed herein, but none of such accounts are related to his proceeding.

c. Professionals at Corporate Recovery Associates, LLC may have worked in cases with or against, or may have referred business to, or have been referred business by, law firms that may be creditors in this case.  Professionals at Corporate Recovery Associates, LLC may have social relationships with individuals at certain of such law firms.  CRA has had prior professional relationships with attorney Gary Rudolph (currently personal bankruptcy counsel to Joseph O'Dea) who represented me both personally and my business in a matters over 10 years ago and also with Robert Opera, current bankruptcy counsel for Jacob Hyten and Robert Baily, shareholders and directors of the Debtor and parties interested in purchasing the assets of the Debtor.  I have worked with Mr. Opera in the capacities of Plan Agent and Liquidating Trustee. Additionally, in my professional role as plan agent and liquidating trustee, prior to taking the bench, Judge Mann represented a debtor in a case in which Mr. Rudolph and I represented the Creditor's Committee.  Finally, Michael O'Halloran, Judge Mann's husband, provided a few hours of consulting services to Debt Settlement Associates, LLC now known as Corporate Recovery Associates, LLC on unrelated investment maters approximately 15 years ago.

d. Professionals at Corporate Recovery Associates, LLC may have spouses, significant others or relatives who have had, or may have, relationships with professionals or other entities that may be creditors or that otherwise may have interests adverse to the

interests of the Debtor in this case.  Corporate Recovery Associates, LLC's policies forbid disclosure of confidential information to any person or entity outside of Corporate Recovery Associates, LLC.

14.    The Debtor has not paid to Corporate Recovery Associates, LLC a pre-petition retainer in this case.

15.    I acknowledge that, as proposed CRO for the Debtor, I will have a fiduciary duty to act solely in the best interests of the Debtor's estate and the Debtor's creditors.  If this Court authorizes the Debtor to retain me as CRO in this case, I will use my best efforts to attempt to ensure that the Debtor's case is administered in the best interests of the Debtor's creditors, and free of any conflicts adverse to the interests of creditors.

16.    Based upon the foregoing, Corporate Recovery Associates, LLC believes that it has no material conflicts in this case, and that it is a "disinterested person," as defined in Section 101(14) of the Bankruptcy Code.

17.    The Debtor is a fairly sizeable enterprise with numerous creditors and other business relationships.  Corporate Recovery Associates, LLC is unable to state with certainty that every client relationship or other material connection with the Debtor's case has been disclosed in this Declaration.  If Corporate Recovery Associates, LLC discovers additional information that requires disclosure, Corporate Recovery Associates, LLC will file a supplemental disclosure with the Court.

18.    If this Court approves my proposed retention as CRO for the Debtor in this case, Corporate Recovery Associates, LLC will not accept any engagement or perform any services for any person or entity other than the Debtor with respect to the Debtor's case.  However, Corporate Recovery Associates, LLC will continue to provide professional services to, and engage in commercial or professional relationships with, any persons or entities that may be creditors of the Debtor or parties-in-interest in the Debtor's case, provided that such services do not relate to, or have any connection with, the Debtor's case.

19. Corporate Recovery Associates, LLC has not agreed to share with any person or entity any compensation received in the Debtor's case, except as among the members, principals and employees of Corporate Recovery Associates, LLC.

20. To the best of Corporate Recovery Associates, LLC's knowledge, Corporate Recovery Associates, LLC does not have any connection with the United States Trustee, anyone employed in the Office of the United States Trustee, or any United States bankruptcy judge or district judge, for the Southern District of California. Corporate Recovery Associates, LLC has not received any promises as to payment or compensation in connection with this Chapter 11 case other than as disclosed herein.

21. It is my belief that the terms and conditions of the Engagement Agreement were negotiated by Corporate Recovery Associates, LLC and the Debtor at arm's length and in good faith and are very fair to the Debtor and its creditors.

22. In the event that the Debtor requests that Corporate Recovery Associates, LLC assume additional or different officer positions for the Debtor, provide financial advisory services to the Debtor, or the Debtor seeks to modify materially the functions that I am to perform as CRO for the Debtor, a motion to modify Corporate Recovery Associates, LLC's retention will be filed by the Debtor.

23. No principal, employee or independent contractor of Corporate Recovery Associates, LLC will serve as a director of the Debtor while I am rendering services as CRO to the Debtor.

24. I recognize that, as CRO, I will act under the direction, control and guidance of the Board of Directors of the Debtor, and I will serve at the pleasure of the Board of Directors.

25. As CRO of the Debtor, I will not be engaged on a full-time basis. While I will continue to work on other engagements, I believe that none of my other current engagements poses any conflict with respect to my serving as CRO of the Debtor, and I will not accept any new engagement that would create a conflict for me in connection

1   with the Debtor's case or put me in a position adverse to the interests of the Debtor and
2   the Debtor's creditors.

3       26.    For a period of three (3) years after the conclusion of the Debtor's
4   retention of Corporate Recovery Associates, LLC in this case, Corporate Recovery
5   Associates, LLC will not make any investments in the Debtor.

6       I declare under penalty of perjury under the laws of the State of California and
7   the United States of America that the foregoing is true and correct to the best of my
8   knowledge.

9       Executed this _11_ th day of January 2018 at San Diego, California.

12                          Richard J. Feferman

393186-v1                                      - 10 -

1

## EXHIBIT TABLE

2

3

| Exhibit | Description | Pages |
|---------|-------------|-------|
| "1" | Engagement Agreement | 12 – 20 |
| "2" | Feferman/Myers  Resume | 21 – 26 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

`

# EXHIBIT 1

**Exhibit 1**
**Page 12**

# AGREEMENT FOR THE ENGAGEMENT OF A
# CHIEF RESTRUCTURING OFFICER

UPON APPROVAL BY THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, THIS AGREEMENT is deemed effective December 26, 2017 between Core Supplement Technology, Inc. ("Corporation"), a California corporation having its offices at 4645 North Avenue, Oceanside California, 92056 and Corporate Recovery Associates, LLC ("CRA"), 3830 Valley Centre Drive, Suite 705-152, San Diego, CA 92130.

## CRA's Availability and Services

CRA agrees that during the term of this Agreement CRA will be available at Corporation's request to render working services to Corporation. It is understood by the parties that this agreement is subject to the approval of the Bankruptcy Court for the Southern District of California ("Bankruptcy Court"). The services to be provided include, but are not limited to:

1. Description of Services

    a. Officers.  In connection with this engagement, CRA shall make available to the Corporation Richard Feferman to serve as the Chief Restructuring Officer of the Corporation (the "CRO").

    b. Duties and Powers.

        (i)    The CRO shall manage the business and financial affairs of the Debtor.

        (ii)   The CRO's shall direct the sale of the assets of the Debtor and such other plans as may maximize the enterprise value of the Debtor. With respect to any sale of the assets of the Debtor, the CRO will handle all aspects of the sale proceedings in the Debtor's case, including the following: marketing of the Debtor's assets; facilitating bidders' due diligence; negotiations with any potential bidder for the Debtor's assets; evaluating any bid made for the Debtor's assets; conducting an auction for the sale of the Debtor's assets; and selecting, subject to the approval of the Bankruptcy Court, the successful bid(s) for the Debtor's assets.

        (iii)  The CRO shall supervise the administration of the Chapter 11 case including preparation of the various schedules and reporting required by the Office of the United States Trustee.

        (iv)   The CRO shall review claims asserted against the Debtor.

(v)     The CRO shall review and evaluate pleadings, financial reports and other documents filed by creditors or parties-in interest in the Debtor's Chapter 11 case.

(vi)    The CRO shall appear in any proceedings or hearings in the Bankruptcy Court in the Debtor's Chapter 11 case as appropriate.

(vii)   If needed, the CRO shall assist the Debtor in the negotiation, formulation, confirmation and implementation of a Chapter 11 plan.

(viii)  The CRO shall coordinate with Debtor's counsel and assist Debtor's counsel with respect to various pleadings as requested.

(ix)    The CRO shall communicate with creditors; any committees; and with other parties-in-interest in the case.

(x)     The CRO shall manage the affairs of the Debtor and perform the typical duties of a CRO, and such other services as may be mutually agreed by the Parties.

c.  <u>Reporting.</u>  The CRO shall report to the Board of Directors of the Corporation.

d.  <u>Employment by CRA.</u>  The CRO will continue to be employed by CRA and while rendering services to the Corporation will continue to work with other personnel at CRA in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement. With respect to the Corporation, however, the CRO shall operate pursuant to the terms of this Agreement and CRA shall have no liability to the Corporation for any acts or omissions of the CRO.

e.  <u>Projections: Reliance; Limitation of Duties.</u>  The Corporation acknowledges that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Corporation's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, the CRO will be relying on information provided by other members of the Corporation's management in the preparation of those projections and other forward-looking statements.

2.  <u>Compensation</u>

CRA shall be paid a nonrefundable fee of $20,000 per month ("Flat Rate") for the services of Mr. Feferman (which shall be prorated for any partial months based on the number of days in the prorated month). The Corporation shall also pay CRA an initial advanced deposit of $20,000 which will be applied to the final bill. At the sole

Exhibit 1

discretion of CRA money held in this deposit may be used to satisfy any balances 15 days old or older. Upon the use of such funds the Debtor is obligated to restore the advanced deposit to $20,000. The Corporation grants CRA a security interest in the advanced deposit.

In addition, Alan Myers of CRA shall provide limited services as a financial analyst at his non-litigation hourly rate of $240 per hour and limited to no more than 20 hours per month.

The total hourly billings of CRA are subject to a $275 per hour "Blended Rate Cap" for the total aggregated hourly billings for the engagement. The Blended Rate Cap is not applicable to employees of CRA that are provided on a Flat Rate, such as the arrangement for services rendered by Mr. Feferman. In the event an employee has provided work on a Flat Rate basis for a period of time and at hourly rates for other times, only the time billed at hourly rates are subject to the Blended Rate Cap.

CRA and the Corporation agree that, on the date that is sixty (60) days from the date of the order appointing the CRO, they may revisit the compensation paid to CRA and if it appears to be advantageous to the Bankruptcy Estate, and approval by the Court if required, CRA will be paid $275.00 per hour blended rate covering all services rendered by personnel provided by CRA.

In addition to payment for services rendered the Corporation agrees to reimburse CRA for any reasonable out-of-pocket expenses incurred in connection with the services provided such as reasonable travel expenses, computer research, messenger and telephone charges. Mileage expenses will be reimbursed at 2018 IRS rates.

3. Term

The engagement will commence as of December 26, 2017 and continue until terminated pursuant to the provisions below.

4. No Audit. Duty to Update

It is understood that the CRO and CRA are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC, or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Corporation. The CRO and CRA are under no obligation to update data submitted to them or review any other areas.

Exhibit 1
Page 15

5. <u>No Third Party Beneficiary.</u>

The Corporation acknowledges that all advice (written or oral) given by CRA to the Corporation in connection with this engagement is intended solely for the benefit and use of the Corporation (limited to its Board of Directors and management) in considering the matters to which this engagement relates. The Corporation agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without CRA's prior approval (which shall not be unreasonably withheld), except as required by law.

6. <u>Conflicts.</u>

CRA is not currently aware of any relationship that would create a conflict of interest with the Corporation or those parties-in-interest of which the Corporation has made us aware. Because CRA is a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that CRA may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Corporation, including creditors for the Corporation. In the event the Corporation accepts the terms of this engagement, CRA will not represent, and CRA has not represented, the interests of any such entities or people in connection with this matter.

7. <u>Confidentiality / Non-Solicitation.</u>

The CRO and CRA shall keep as confidential all non-public information received from the Corporation in conjunction with this engagement, except (i) as requested by the Corporation or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other that as a result of a breach of this provision.

8. <u>Hold Harmless.</u>

The Corporation shall hold harmless CRA and the CRO. The CRO shall be covered as an officer under the Corporation's existing director and officer liability insurance policies. Within 30 days of the date of this agreement the Corporation shall purchase liability insurance covering the CRO for a period of 2.5 years from the date of retention. The indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Corporation's charter, bylaws, or other organizational documents or policies shall affect the CRO's or CRA's rights hereunder.

9. <u>Indemnity:</u>

Subject to the terms and conditions of any application and order entered in a bankruptcy case commenced by the Corporation, the Corporation agrees to indemnify and hold harmless each of CRA, its affiliates and its and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members and each of their respective successors and assigns (each, an "Indemnified Person") against and from all losses, claims, damages, liabilities or expenses and all actions, claims, proceedings and investigations brought or threatened by or on behalf of any person (including Corporation Claims (as defined below)) arising out of, relating to or in connection with this Agreement or CRA's engagement hereunder collectively, "Indemnification Claims"), and to promptly reimburse each Indemnified Person for all reasonable legal and other expenses as incurred by such Indemnified Person in connection with investigating, preparing to defend or defending any such Indemnification Claims (including expenses of CRA personnel required to testify or otherwise assist in any litigation), whether or not such Indemnified Person is named as a party thereto; provided, however, that the Corporation shall not be liable for Indemnification Claims to the extent that such claims are finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. The Corporation also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Corporation or the Corporation's security holders or creditors arising out of, relating to or in connection with this Agreement or CRA' s engagement hereunder (collectively, "Corporation Claims") except to the extent that such liability is finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. To the extent permitted by applicable law, CRA's liability with respect to Corporation Claims shall be limited to the amount of any fees actually received by CRA pursuant to this Agreement. If multiple Indemnification Claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with CRA's engagement hereunder, and indemnification is permitted under applicable law with respect to at least one such claim, the Corporation agrees that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent that such arbitration award, or any portion thereof, is expressly stated to be based solely on a claim as to which indemnification is not available.

If the foregoing indemnification and reimbursement for Indemnification Claims are for any reason insufficient or unavailable to any Indemnified Person with respect to any Indemnification Claims, the Corporation agrees to make contributions to any such Indemnification Claims paid or payable (or proposed to be paid) in such proportion as is appropriate to reflect the relative economic benefits received by the Corporation and its security holders and creditors, on the one hand, and the Indemnified Persons, on. the other hand; provided, however, that, to the extent permitted by applicable law, the Corporation agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the

Indemnified Persons will not be liable for more than the fees actually received by CRA pursuant to this Agreement. The "relative economic benefits" received by the Corporation and its security holders and creditors, on the one hand, and the Indemnified Persons, on the other hand, shall be deemed to be in the same proportion as is appropriate to reflect the relative economic benefits and the relative fault of the Corporation and its security holders and creditors, on the one hand, and the Indemnified Persons, on the other hand, as well as other equitable considerations; provided, however, that, to the extent permitted by applicable law, the Corporation agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CRA pursuant to this Agreement.

The Corporation further agrees that, without the prior written consent of CRA (not to be unreasonably withheld, conditioned or delayed), the Corporation will not settle, compromise or consent to the entry of any judgment in any pending or threatened action, claim, proceeding or investigation with respect to which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such action, claim, proceeding or investigation) unless such settlement, compromise or judgment includes an unconditional release of all Indemnified Persons from all liability resulting from such action, claim, proceeding or investigation.

The foregoing rights (i) shall be in addition to any other rights any Indemnified Person may have, (ii) shall not limit any other rights that any Indemnified Person may have at law or otherwise and (iii) shall survive any termination of the engagement or this Agreement.

10. Richard Feferman as Officer of the Corporation.

Notwithstanding anything herein to the contrary, CRA hereby agrees that, without the consent of the Board of Directors of the Corporation, CRA will not substitute any party for Richard Feferman to serve as CRO of the Corporation; provided, however, that nothing herein shall prohibit CRA from staffing its engagement with the Corporation with personnel in addition to Richard Feferman as needed to effectively manage the case.

### Termination of Agreement

This Agreement may only be terminated as follows:

(1)    By Feferman providing 30 days' written notice in accordance with the notice provisions of this Agreement; or

(2)    By the Debtor upon the Court's entry of an order finding good cause for termination.

Exhibit 1
Page 18

### Deadlock of Board

In the event that the Debtor's board of directors deadlocks on an issue, Feferman may seek Court approval to break the deadlock.

### Retention of Jurisdiction

In the event of a dispute between the Corporation (and its officers, directors, shareholders and affiliates) and CRA arising from or related to this Agreement, then the Bankruptcy Court shall have exclusive jurisdiction to determine such dispute.

*[remainder intentionally left blank]*

Chief Restructuring Officer Engagement Agreement                                    Page 7 of 8

**Exhibit 1**
**Page 19**

### Notice

Any written notice to be given under this Agreement will be deemed sufficiently served when deposited in the United States mails in a sealed envelope with sufficient postage affixed, registered or certified, with return receipt requested and addressed to:

CORPORATION:
Mr. Joseph O'Dea
at: Core Supplement Technology, Inc.
4645 North Avenue
Oceanside, California 92056

CRA:
Mr. Richard Feferman
at: Corporate Recovery Associates, LLC
3830 Valley Centre Drive, Suite 75-152
San Diego, California 92130

Any party may change the address to which notice to it may be given by written notice to the other as provided in this Agreement.

Executed on January 11, 2018, San Diego County, California.

CORPORATION
Core Supplement Technology, Inc.

By _____
Joseph O'Dea, Chairman of the Board of Directors

CRA
Corporate Recovery Associates, LLC

_____
Richard Feferman, Managing Member

Chief Restructuring Officer Engagement Agreement                    Page 8 of 8

**Exhibit 1
Page 20**

Exhibit 2

# EXHIBIT 2

Exhibit 2
Page 21

Case 17-06078-MM11    Filed 01/11/18    Entered 01/11/18 19:15:14    Doc 89    Pg. 22 of 26
Exhibit 2

## Richard J. Feferman

richard@crarecovery.com
Corporate Recovery Associates, LLC
3830 Valley Centre Drive, Suite 705-152; San Diego, CA 92130
Direct: 858-792-7473/ Cell: 858-205-7424

**Corporate Recovery Associates, LLC (and predecessor entities) financial advisor** in numerous commercial chapter 11 bankruptcy matters and adversary proceedings, Richard Feferman is uniquely qualified as one of only a few people in the nation who is both a Certified Insolvency and Restructuring Advisor (CIRA) and a Master Analyst in Financial Forensics (MAFF). Mr. Feferman has extensive experience in the sale of operating businesses and the liquidation of estate assets. He has developed an expertise in the financial analysis of claims against highly leveraged, distressed companies, Ponzi scheme promoters, and third parties to related transactions. Mr. Feferman and his team have extensive "hands-on" experience in the analysis and restructuring of financially troubled companies and the multiparty negotiations that are usually necessary to reach a consensus on a plan of reorganization. He is well versed in the analysis of valuation issues and plan feasibility, the financial analysis of asset misappropriation, and has advised creditors (as well as creditor committees) in a variety of industries including agriculture, energy, information technology, health care, manufacturing, restaurants, retailing, publishing, hotels, and real estate. Additionally, Mr. Feferman conducts special purpose financial examinations of commercial transactions.

### Prior Full-time Employers

**Primary Media West, LLC outdoor advertising (billboard) company–Co-Managing Member**– Responsible for development and operations in the western United States. Successfully sold business to CBS Outdoor know known as Outfront Media, Inc. (NYSE: OUT).

**Business Valuation Services acquired by Century Business Services (NASDAQ symbol CBIZ), Senior Associate** – financial advisors in chapter 11 matters.

**Bennett Consolidated, Regional Manager – Florida & Southern California.** Responsible for the purchase, subdivision, and resale of eight real estate development projects in Southern California on approximately 1,100 acres.

**CASCO Capital Management** – Asset Manager responsible for portfolio of both real and financial assets including: securities, multi and single tenant industrial real estate, multi-family development project, agricultural properties, and secured loan on 8,000-acre mixed use land development project.

Exhibit 2
Page 22

**Prior Academic Employers**

**University of California San Diego**

> *Division of Professional Studies,* **Lecturer** – Financial Decision Making.

**Education & Professional Credentials**

- BBA (1982) Southern Methodist University emphasis in Real Estate, Quantitative Analysis, and Finance. Awarded Certificate for special course of study from the Costa Institute of Real Estate Finance.

- CIRA – Certified Insolvency and Restructuring Advisor No. 1019, Association of Insolvency & Restructuring Advisors ("AIRA")

- MAFF – Master Analyst Financial Forensics No. 722, National Association of Valuators and Analysts

**Professional Affiliations**

- American Bankruptcy Institute

- Association of Insolvency and Restructuring Advisors

- National Association of Valuators and Analysts

**Representative Bankruptcy Experience**

**MTI Technology Corporation, Debtor in Possession**
**United States Bankruptcy Court for the Central District of California**
**Business and Financial Advisor to the Official Committee of Creditors**
**Chief Executive Officer, Plan Agent, Disbursing Agent, and Liquidating Trustee**
Mr. Feferman was appointed Chief Executive Officer of this successfully reorganized company. Payments to unsecured creditors were possible as a result of the sale of the Debtor's European subsidiaries, the US corporate entity, and several US sales units. Recoveries were made against parties receiving numerous prepetition disbursements of the Debtor's cash as well as against its alleged secured creditor due to lien perfection issues. Significantly Mr. Feferman discovered previously unidentified intangible assets which he successfully liquidated; and supervised the forensic examination of the debtor's servers which led to the recovery of improper "Eve of Bankruptcy" payments to the Debtor's outside counsel.

**Exhibit 2**
**Page 23**

**GTL (USA), Inc.**
**United States Bankruptcy Court for the Eastern District of Texas**
**Business and Financial Advisor to the Unsecured Creditors Committee**
**Creditors Trustee**
Mr. Feferman discovered material errors in the financial model of the US subsidiary (the "Debtor") of one of the largest telecom infrastructure companies based in India. The Debtor was in an emergency situation and its restructuring efforts where headed for failure. Although the Debtor did not want to sell, Mr. Feferman and the committee's counsel were able to negotiate, with the Debtor (and a litigating creditor), a consensual plan of reorganization that provided a significant financial recovery creditors. Concerned with preserving cash for the benefit of creditors, the committee in this case has chosen Corporate Recovery Associates, LLC because of its demonstrated ability to quickly and cost effectively assess the viability of this debtor and to advice the Committee on restructuring and liquidation alternatives. Pleased with the results of the case, the creditors committee selected Mr. Feferman to direct the affairs of the Creditors Trust which was formed to administer and distribute funds to creditors.

**RTA Desert, Inc., Debtor in Possession**
**United States Bankruptcy Court for the Central District of California**
**Business and Financial Advisor to the Official Committee of Creditors**
This debtor's management proposed a plan of reorganization to transfer value to themselves at the expense of unsecured creditors after failing to negotiate a sale of the business with any of more than 80 prospective buyers. With Mr. Feferman's leadership, the creditors committee renegotiated with the debtor's management a consensual plan that resulted in the successful sale of the operating business and real property assets.

**S. T. Moll, Inc., Debtor in Possession**
**United States Bankruptcy Court for the Central District of Texas**
**Financial Advisor to the Debtor**
Prior to the employment of Corporate Recovery Associates, this debtor's restructuring had not progressed as anticipated. Corporate Recovery Associates identified a number of areas where costs could be reduced and operations improved. As a result, leases and contracts where renegotiated resulting in significant savings. Management was reorganized and refocused on increasing sales, which have been driven up 14% for the second half of 2014 v the same period in 2013. In open court the Judge said, "Generally, there are two ways to get better in a reorganization proceeding. One thing is to cut costs, the other thing is to increase income, and you have done both…Mr. Feferman, you have more than earned your fees".

**Boston West, LLC, Debtor in Possession**
**United States Bankruptcy Court for the Central District of California**
**Business and Financial Advisor to the Official Committee of Creditors**
Bankruptcy case of the Southern California franchisee of the Boston Market restaurant chain. Negotiated the transfer of assets for the benefit of unsecured creditors in a case in which the Debtor's acquirer proposed a dividend equal to zero. Orchestrated the successful auction and disposition of estate assets in a compressed time period for the

Exhibit 2
Page 24

benefit of creditors. During the wind-up Mr. Feferman supervised the analysis of preferential transfers.

**Verified Identity Pass, Inc., Debtor in Possession (dba Clear and Clear Pass)**
**United States Bankruptcy Court for the Southern District of New York**
**Business and Financial Advisor to the Official Committee of Creditors**
Mr. Feferman was responsible for developing auction procedures that resulted in a heated bidding war for the intellectual property and leaseholds of this provider of biometric security services at airports.

**Perkins & Marie Callender's, Inc. et al**
**United States Bankruptcy Court for the District of Delaware**
**Representative to the Official Committee of Creditors**
In this successful reorganization Mr. Feferman was responsible for initiating and conducting the due diligence investigation that revealed the criminal background (conversion of more than $300,000.00) of an individual playing a material fiduciary role in the case. Mr. Feferman's investigation resulted in the removal of the individual from consideration as a candidate for the role of a fiduciary with financial responsibility for the welfare of creditors.

**Creative Capital Leasing Group, LLC**
**United States Bankruptcy Court for the Southern District of California**
**Business and Financial Advisor to the Trustee**
**Business and Financial Advisor to the Official Committee of Creditors**
After the chief executive of this company fled the country leaving a derelict set of locked electronic records, Mr. Feferman led the forensic team that recovered the electronic accounting system and examined the approximately 40,000 pages of financial records that were required to reconstruct this debtor's financial records. These records were instrumental in pursuing litigation recoveries and asset sales which brought in millions of dollars for the benefit of creditors.

**Exhibit 2**
**Page 25**

## Alan Myers, Senior Accounting Analyst

Mr. Myers is a Certified Public Accountant and a Certified Forensic Accountant. He specializes in Bankruptcy Accounting. In addition to his employment with Corporate Recovery Associates, he is an active sole practitioner. Mr. Myers has substantial hands on experience in all phases of bankruptcy accounting and in the forensic analysis of business and banking records. He also manages over $4,000,000 in deposits for Chapter 7 trustees. He has extensive experience in the investigation of "hidden assets". Mr. Myers received a B.S. in Accounting With Distinction from San Diego State University (San Diego, CA – 1978).

**Exhibit 2**
**Page 26**