1    J. ALEXANDRA RHIM (SBN 180636)
     **HEMAR, ROUSSO & HEALD, LLP**
2    15910 Ventura Boulevard, 12th Floor
     Encino, CA  91436
3    Telephone:  (818) 501-3800
     Facsimile:  (818) 501-2985
4
     Attorneys for Bank of America, N.A. and
5    Banc of America Leasing & Capital

6

7                    **UNITED STATES BANKRUPTCY COURT**

8                    **SOUTHERN DISTRICT OF CALIFORNIA**

9

10   In re                                          Case No:  17-06078-MM11

11   CORE SUPPLEMENT TECHNOLOGY, INC.,              Chapter 11
     a California corporation,
12                                                  **OPPOSITION BY BANK OF AMERICA,**
                                                    **N.A. AND BANC OF AMERICA LEASING**
13                        Debtor and Debtor in      **& CAPITAL TO MOTION FOR ORDER**
                          possession.               **APPROVING (A) SALE FREE AND**
14                                                  **CLEAR, (B) ASSUMPTION AND**
                                                    **ASSIGNMENT OF EXECUTORY**
15                                                  **CONTRACTS AND UNEXPIRED LEASES;**
                                                    **AND (C) RELATED RELIEF;**
16                                                  **DECLARATION OF J. ALEXANDRA**
                                                    **RHIM IN SUPPORT THEREOF**
17
                                                    Hearing Date:
18                                                  DATE:    March 6, 2018
                                                    TIME:    2:00 p.m.
19                                                  PLACE:   Dept. 1; Room 218

20

21

22

23        Bank of America, N.A. (the "BofA") and Banc of America Leasing & Capital ("Banc Leasing"

24   together with the BofA shall be referred to as the "Bank") hereby jointly submit this opposition to the

25   Motion for Order Approving (A) Sale Free and Clear, (B) Assumption and Assignment of Executory

26   Contracts and Unexpired Leases; and (C) Related Relief (the "Sale Motion") filed by the above-

27   captioned debtor (the "Debtor").

28

*Left margin (vertical text):* HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

**PRELIMINARY STATEMENT**

The Debtor proposes to sell substantially all assets for a purchase price of $1,100,000 subject to adjustment.  The purchase price is less than the amount of the secured debt encumbering such assets.  Accordingly, the Bank takes the position that its consent is required to permit a free and clear sale under 11 U.S.C. § 363(f)(2) because the Debtor cannot satisfy § 363(f)(3).  In addition, the Bank is unable to consent to the sale as the terms of the proposed sale are ambiguous and uncertain.

The Bank has particular concerns regarding the fairness of the purchase price.  Simpson Labs LLC's ("Simpson") initial purchase offer was in excess of $2 million but Simpson has unexpectedly revised its offer downward to $1.1 million.  The Bank has specific concerns whether Simpson will reap a windfall from purchasing all of the Debtor's orders, WIP and accounts receivable, to which Simpson has allocated the lion share of the purchase price.  Absent the sale to Simpson, these items can be easily converted to cash that would otherwise benefit the estate.  Hence, for these particular assets, further inquiry is necessary especially given Simpson's unique relationship with the Debtor and Mr. O'Dea's expected position at Simpson.

**FACTUAL BACKGROUND**

**Loan Obligations**

1.     As of the petition date, Debtor was indebted to BofA in an amount not less than $1,475,089.16 comprised of outstanding principal of $1,474,700.00, and accrued interest of $389.16. (the "Loan Indebtedness").

2.     The Loan Indebtedness is evidenced by, among other things: (a) a Loan Agreement, dated October 11, 2016; (b) Security Agreement, dated October 11, 2016; (c) a UCC-1 financing statement; and (d) Waiver Agreement, dated May 25, 2017.

3.     By virtue of the foregoing, BofA holds a blanket first priority lien on all assets (the "Collateral") of Debtor.  All of Debtor's cash, proceeds and product generated by the Collateral is "Cash Collateral" of BofA within the meaning of Bankruptcy Code Section 363(a).

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

4.      As of the petition date, Debtor was indebted to Bank Leasing in an amount not less than $326,065.98 comprised of outstanding principal of $311,957.07, accrued interest of $1,067.05, recoverable fees of $13,041.86 (the "Equipment Indebtedness" together with the Loan Indebtedness shall be referred to collectively as the "Bank Obligations").[1]

5.      The Equipment Indebtedness is evidenced by, among other things: (a) a Master Loan and Security Agreement No. 31927-70000 dated October 12, 2016; (b) Equipment Security Note No. 001, dated October 12, 2016[2]; (c) Equipment Security Note No. 002, dated December 22, 2016; and (d) UCC-1 financing statements.

6.      By virtue of the foregoing, the Bank holds a first priority lien on certain equipment, accounts, general intangibles, deposit accounts, related claims and proceeds of the foregoing as more particularly described in the Loan Documents (the "Prepetition Leasing Collateral" together with Prepetition Bank Collateral shall be referred to collectively as the "Prepetition Collateral") of Debtor. All of Debtor's cash, proceeds and product generated by the Prepetition Collateral is "Cash Collateral" of BofA Leasing within the meaning of Bankruptcy Code Section 363(a).

7.      As of January 31, 2018, BofA is owed not less than $1,498,930.14 and Banc Leasing is owed not less than $306,066.65 with continuing interest and other recoverable fees and costs.[3]

8.      The Debtor has been authorized to use Cash Collateral for payment of only critical and necessary expenses and subject to the grant of a *replacement lien* in favor of the Bank on all of the Debtor's postpetition assets.

**Proposed Sale Terms**

9.      The Debtor through Richard Feferman of Certified Insolvency and Restructuring Advisor (CIRA) (the "CRO")[4] has negotiated a proposed sale of substantially all of its assets to

---

[1]   The documents and agreements evidencing the Bank Obligations shall be referred to collectively as the "Loan Documents."

[2]   The first page of the note was replaced to correct the commencement date of the "Initial Payment" as set forth in Section 2 therein.

[3]   See Proofs of Claim filed as claim register no. 7 and 10.

[4]   The court authorized the Debtor to engage the CRO pursuant to an order entered on or about February 20,

3

1  Simpson.  The sale terms are memorialized in the Asset Purchase Agreement (the "APA") attached as

2  Exhibit 2 to the Declaration of Richard Feferman filed in support of the Sale Motion.[5]

3       10.    The APA provides for the sale of substantially all of the Debtor's assets to Simpson

4  (referred to as the "Included Assets").  The Included Assets include orders and work-in-process

5  ("WIP"), deposits for orders and WIP, accounts receivable relating to such orders and WIP as such

6  assets are identified in Exhibit H appended to the APA.  The Included Assets also include all accounts

7  receivable identified in Exhibit I appended to the APA.

8       11.    Excluded from the proposed sale are items not specifically delineated as Included

9  Assets such as cash and bank deposits (referred to as the "Excluded Assets").  Presumably then, the

10  cash and bank deposits on hand as of the Closing Date (as defined in the APA) shall be excluded from

11  the sale transaction (the "Excluded Cash").

12      12.    The proposed purchase price is $1,100,000 to be paid as follows: a deposit in the

13  amount of $550,000 due at the time of execution of the APA followed by the balance of $550,000 to

14  be paid at the Closing.  It is presently unknown whether the deposit has been made.

15      13.    As for the remaining cash on closing, the Bank understands that the CRO is working on

16  a projection to provide prior to the sale hearing.

17  **APA Ambiguities**

18      The APA is either ambiguous or silent on a number of issues:

19      •    Accounts Receivable:  The APA provides that Simpson will purchase the accounts

20  receivable (and related rights) identified in Exhibit H and I of the APA "subject to changes . . during

21  the period between execution of this Agreement and the closing."  Prior to the close of sale, there will

22  very likely be cash proceeds generated from such accounts receivable.  Simpson should have no

23  interest in such cash proceeds, which should become part of the Excluded Cash.

24      •    Excluded Cash: Would consist of cash proceeds collected to date and proceeds derived

25

26

27  2018.
    [5]  Docket No. 141.

4

28  OPPOSITION TO SALE MOTION

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

1    from accounts receivable not identified in Exhibit H and I of the APA.  Thus, as explained above, the

2    Excluded Cash should also include all cash proceeds generated from the Exhibit H and I Accounts

3    Receivable that are received prior to closing.

4        •        Equipment: Section 5.4 of the APA provides that if any equipment is damaged, worn

5    out, or not available at the time of closing, "Simpson may reduce the Purchase Price by an amount

6    reasonably equivalent to the lesser of the value of the equipment or the cost to repair such equipment."

7    There is no explanation regarding how the "value" or "cost to repair" will be quantified or determined.

8    Without clear delineation regarding how "value" will be determined, this could lead to an unexpected

9    price reduction and dispute.  In Exhibit K, Simpson agreed to allocate a value of $50,000 to the

10   equipment.  Accordingly, any reduction to the Purchase Price must be capped at an amount much less

11   than $50,000 based on a predetermined methodology that must be disclosed in advance.  Further, it

12   appears the ability to impose a reduction is limited to the period between execution of the APA and the

13   Closing.  Thus, to the extent any purchase price reduction will be sought, there must be deadline of no

14   more than 30 days to seek such a reduction otherwise no adjustment to the Purchase Price will be

15   permitted.

16       •        Omitted Schedules to APA:  The *final* version of the Schedules must be made available

17   for review before any APA can be approved.

18       •        Purchase Price Allocation:  Exhibit K to the APA reflects the allocation of the purchase

19   price.  Specifically, $530,000 is allocated to Orders/WIP and $275,000 is allocated to Accounts

20   Receivables.  Further explanation must be provided regarding the value of the assets identified in

21   Exhibits H and I in view of the allocated values attributed to these assets. The Debtor should disclose

22   the "face value" of the items indicated in Exhibits H and I to determine whether the Purchase Price is

23   fair and reasonable.  Further information should also be provided regarding the dilution rate that the

24   Debtor has historically suffered in order to assess what sort of discount is appropriate to assess against

25   the face value of these assets.

26

27

28

5

OPPOSITION TO SALE MOTION

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

1    The Bank submits that Simpson should refund to the estate any funds realized on

2  Orders/WIP and Accounts Receivable that are in excess of the allocated amounts.

3    • Deletion of Interim Operating Agreement:  At the February 22, 2018 hearing, the

4  parties withdrew the Interim Operating Agreement.  Thus, any references in the APA to such

5  operating agreement and Exhibit L should be deleted or stricken from the APA.

6    • Representations and Warranties: If any are appropriate, they should be limited to those

7  set forth in Section 5 of the APA.  Accordingly, any other statements in the APA including those made

8  in the recitals should not be construed as representations or warranties by the Debtor.  Presently, the

9  APA contains a representation and warranty by the Debtor that "at the Closing, Simpson will acquire

10  all of Core's right, title and interest in and to all the Included Assets" on a free and clear basis.  Such

11  representation and warranty does not appear to be a guaranty by the Debtor regarding the *extent* of its

12  ownership or interest in the Included Assets.

13    • Post-Closing Deadline:  A deadline and procedure should be established with respect to

14  any ability by Simpson to make any downward adjustments to the Purchase Price.

15    • Procedures for Simpson's Return of Assets: Simpson has been involved in the Debtor's

16  operations and has provided outsourcing.  Therefore, if Simpson is not the prevailing bidder, a process

17  must be established to ensure that Simpson return all estate assets.  As for proprietary information,

18  Simpson should also enter into a nondisclosure agreement with respect to such information.  There

19  also needs to be a process by which Simpson can transition any work-in-process and estate assets to

20  such other prevailing bidder.

21  **ARGUMENT**

22  **A.    The Debtor Requires the Bank's Consent for a Sale Free and Clear**

23    The Debtor proposes to sell the Assets free and clear of liens under Section 363(f).  However,

24  the Motion is silent on which provision of Section 363(f), the Debtor relies.  Thus, the Debtor has

25  failed to meet its burden under Section 363(f). The Debtor will have the ability to effectuate a free and

26  clear sale only if either: the Bank consents pursuant to section 363(f)(2), or under Code section

27

28

OPPOSITION TO SALE MOTION

363(f)(3), on the basis that the sale price is "greater than the aggregate value of all liens" on the property."

Given the proposed purchase price and the ambiguities contained in the APA, the Bank is unable to consent under section 363(f)(2).  Moreover, the Debtor will be unable to satisfy section 363(f)(3).  The "aggregate value of all liens" on property refers to the *face amount* of the liens, not the amount of the liens as determined under Code section 506(a).  *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 39-40 (9th Cir. B.A.P. 2008); *Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC*, 298 B.R. 527 (D.N.J. 2003); *Federal National Mortgage Ass'n (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821 (N.D. Ill. 1993).

The Bankruptcy Appellate Panel in the Ninth Circuit and other courts correctly reason that the legislative history[6] and plain language of the statute require that "aggregate value of all liens" on property refer to the face amount of the liens.  *Clear Channel Outdoor, Inc. v. Knupfer*, 391 B.R. 25. Absent this interpretation, Section 363(f) would have the effect of authorizing sales free and clear of all liens, *whatever* the amounts of claims they secured.  *Id.*  This would also create a loophole rendering subsections 363(f)(2) and (f)(5) meaningless.  Further, the reasoning in *Knupfer* is in accord with Section 9-315(a) of Article 9 of the California Commercial Code which also requires consent of a secured party to effectuate a free and clear sale.

The Bank Obligations are presently in excess of $1,800,000.  By virtue of its prepetition lien and replacement lien, the sale price of $1,100,000 is not greater than the aggregate amount of the Bank's liens.  Accordingly, the Debtor cannot satisfy § 363(f)(3) and requires the Bank's consent, which is not given at this time.

B.   **The Sale Order Must Provide that Liens Attach to All the Sale Proceeds As a Means of Adequate Protection**

On the request of an entity that has an interest in property the debtor-in-possession proposes to sell, the Court must condition such sale "as is necessary to provide adequate protection of such

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

7
OPPOSITION TO SALE MOTION

interest." 11 U.S.C. § 363(e). The Bank's interest in the subject assets is entitled to adequate protection. A common means of providing adequate protection, in connection with the sale of encumbered estate property free and clear of liens, is a provision for the liens to attach to the sale proceeds with the same validity, priority, and extent as such liens had on the property. See 11 U.S.C. § 363(2) (adequate protection may be provided via an "additional or replacement lien" to the extent that sale of property results in a decrease in the value of such entity's interest in such property).

The Motion is silent on this point.  However, at a minimum, any order approving the sale should provide that liens, claims and interests on the purchased assets attach to all the sale proceeds with the same validity, priority, and extent as such liens had as of the petition date.

**C.      The Court Must Require Clarification of the Terms and Conditions of the Sale.**

The Motion is silent or ambiguous as to several important aspects of the sale.  In order for the Debtor to meet its burden that the proposed sale is within its business judgment, further information regarding the sale is necessary.  Specifically, the Bank seeks further clarity on the issues outlined above on pages 4 through 6 of this opposition.  The requested information is clearly necessary so that the Court and creditors can assess whether the purchase price is fair and reasonable.  In addition, clarity is required to understand that value is being conveyed by way of the Orders/WIP and Accounts Receivable.  At the same time, the Bank has a critical need to understand what cash will be on hand as of closing, which information should be forthcoming from the Debtor.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6]    H.R. Rep. No. 59, 95th Cong., 1st Sess. 345 (1977).

8

OPPOSITION TO SALE MOTION

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

1          **CONCLUSION**

2          Based on the foregoing, the Bank requests that the Motion be denied.  Alternatively, the Bank

3  requests that the Court order such other relief as is just and necessary.

4

5  DATED:  March 1, 2018                              HEMAR, ROUSSO & HEALD, LLP

6                                                                    /s/ *J. Alexandra Rhim*

7                                                          BY: _____
                                                                   J. ALEXANDRA RHIM
8                                                          Attorneys for Bank of America, N.A. and
                                                           Banc of America Leasing & Capital
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                                                          9
28                                                      OPPOSITION TO SALE MOTION

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

1

## CERTIFICATE OF SERVICE

2

3    I am employed in the County of Los Angeles, State of California; I am over the age of 18 years
and am not a party to the within action or proceeding.  I am employed by the law firm of Hemar,

4    Rousso & Heald, LLP, located at 15910 Ventura Blvd., 12th Floor, Encino, CA  91436, Telephone:
(818) 501-3800.

5

6    On March 1, 2018, I served the foregoing document described as **OPPOSITION BY BANK
OF AMERICA, N.A. AND BANC OF AMERICA LEASING & CAPITAL TO MOTION FOR**

7    **ORDER APPROVING (A) SALE FREE AND CLEAR, (B) ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C)**

8    **RELATED RELIEF; DECLARATION OF J. ALEXANDRA RHIM IN SUPPORT THEREOF**
on the interested parties in said action, as follows:

9

10    **Debtor**
Core Supplement Technology, Inc.

11    4645 North Avenue
Oceanside, CA  92056

12
**Debtor's Attorney**

13    Stephen C. Hinze, Esq.
Stephen C. Hinze, Counselor at Law

14    217 Civic Center Drive, Suite 10
Vista, CA  92084

15
**United States Trustee**

16    David Ortiz
Office of the U.S. Trustee

17    880 Front Street
Suite 3230

18    San Diego, CA 92101

19
        ☒    (By Mail) I caused such envelope with postage thereon, fully prepaid, to be placed in

20            the United States mail.

21        ☒    (Federal)  I declare that I am an employee in the offices of a member of the State Bar of
            this Court at whose direction the service was made.

22

23                                        /s/ *Sanaz Adnani*

24                            _____

25                            SANAZ ADNANI

26

27
                                        10

28    OPPOSITION TO SALE MOTION