GOLDSTEIN & MCCLINTOCK LLLP
Thomas R. Fawkes (*pro hac vice pending*)
Brian J. Jackiw
111 W. Washington St., Suite 1221
Chicago, Illinois 60602
Telephone: (312) 337-7700
Facsimile: (312) 277-2305

LAW OFFICE OF NATHAN A. SCHULTZ, P.C.
Nathan A. Schultz, SBN 223539
10621 Craig Road
Traverse City, Michigan 49686
Telephone: (310) 429-7128
Facsimile: (231) 943-2327

Counsel to Berlin Packaging, LLC

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | CASE NO. 17-06078-MM11 |
| CORE SUPPLEMENT TECHNOLOGY, INC., | Chapter 11 |
| Debtor. | **BERLIN PACKAGING, LLC'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF (1) ORDER APPROVING STALKING HORSE, MARKETING AND OVERBID PROCEDURES, AND SETTING FINAL SALE HEARING; (2) ORDER APPROVING (A) SALE FREE AND CLEAR, (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) RELATED RELIEF** |
| | Date:   March 6, 2018<br>Time:   2:00 p.m.<br>Ctrm:   Dept. 1, Room 218<br>Judge:  Hon. Margaret M. Mann |

Berlin Packaging LLC ("*Berlin*") hereby files its objection (the "*Objection*") to the Debtor's Motion for Entry of (1) Order Approving Stalking Horse, Marketing and Overbid Procedures, and Setting Final Sale Hearing; (2) Order Approving (A) Sale Free and Clear, (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) *Related Relief; Memorandum of Points and Authorities in Support Thereof* (Docket No. 138, the "*Sale Motion*") filed by Core Supplement Technology, Inc. (the "*Debtor*").  In support thereof, Berlin states as follows:

**PRELIMINARY STATEMENT**

1. In the Sale Motion, the Debtor, on an extremely aggressive timetable, proposes to sell substantially all of its assets to a proposed stalking horse bidder, Simpson Labs LLC ("*Simpson*"), or to a higher and/or better bidder following an auction governed pursuant to a set of bidding procedures.  Among the assets to be sold by the Debtor are several pieces of equipment in which Berlin holds a valid, properly-perfected, first-priority security interest.

2. It is clear, from the Sale Motion and the ancillary documents and pleadings filed by the Debtor in support of the sale, that the purchase price allocable to Berlin's equipment is considerably less than the value of such equipment.  Indeed, the draft Asset Purchase Agreement ("*APA*") between the Debtor and Simpson allocate only $50,000 to *all* of the Debtor's owned equipment, which includes equipment subject to Berlin's security interests as well as security interests of other equipment lenders.  What is less clear, however, is:  (i) exactly how much of this $50,000 allocation pertains to Berlin's collateral; and (ii) how the Debtor and Simpson derived this figure (which is less than 10% of the scheduled value of its equipment).  Absent this information, Berlin, as well as other similarly-situated creditors, are in no position to determine, with any degree of confidence, its anticipated economic outcome as a result of the sale.

- 2 -

3. Regardless, Berlin *can* determine that it stands to receive nowhere near the value of its collateral if this sale is approved, and therefore, does not consent to the sale of its collateral free and clear of its liens. Moreover, the Debtor has made absolutely no showing that any of the other elements of section 363(f) of the Bankruptcy Code have been satisfied, such that the collateral can be sold over Berlin's objection. Accordingly, the proposed sale to Simpson should not be approved.

**RELEVANT FACTUAL BACKGROUND**

**A.     The Bankruptcy Case**

4. On October 3, 2017 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of California. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B.     Berlin's Claims and Security Interests**

5. Prior to the Petition Date, Berlin provided goods and services to the Debtor, as well as financing for the Debtor's purchase of certain equipment used in its businesses.

6. In furtherance of Berlin's financing of the Debtor's equipment acquisitions (the "*Equipment Financings*"), the Debtor entered into several contracts:

    a. that certain Note and Security Agreement in the principal amount of $117,217.00 ("*Note 1*"), pursuant to which Berlin obtained a purchase-money security interest in the following pieces of equipment: (i) 1 Accutek Automatic Spindle Capper; (ii) 1 KDF-6 Auto Capsules Filling Machine; (iii) 1 Cremer CF1230 Channel Counter/Filler; (iv) 1 G-Series Recirculating Heat Shrink Tunnel; and (v) 1 Caterpillar Electric Forklift plus 36 Volt Charger.

Note 1 had a maturity date of July 25, 2017, and provided for no regular interest, but a default interest rate of 12% per annum. Berlin filed a UCC-1 financing statement perfecting its purchase-money security interest in such equipment with the California Secretary of State on July 29, 2014.

    b.    that certain Note and Security Agreement in the principal amount of $125,663.00 ("*Note 2*"), pursuant to which Berlin obtained a purchase-money security interest in the following pieces of equipment: (i) 1 Pharmafill Cottoner Model CS1; (ii) 1 CVC 300 C Wrap Around Labeler; (iii) 1 Lepel CS Plus Induction Sealer; and (iv) 1 Semi-automatic Pallet Stretch Wrapping Machine. Note 2 has a maturity date of August 25, 2018, and provided for no regular interest, but a default interest rate of 12% per annum. Berlin filed a UCC-1 financing statement perfecting its purchase-money security interest in such equipment with the California Secretary of State on August 28, 2015.

    c.    that certain Note and Security Agreement in the principal amount of $150,247.25 ("*Note 3*"), pursuant to which Berlin obtained a purchase-money security interest in 1 165 Cubic Foot Paul Abbe Double Cone Blender, Model # 96 RCB. Note 3 has a maturity date of May 29, 2019, and provided for no regular interest, but a default interest of 12% per annum. Berlin filed a UCC-1 financing statement perfecting its purchase-money security interest in such equipment with the California Secretary of State on June 6, 2016.

7. Copies of Note 1, Note 2 and Note 3 (collectively, the "*Notes*"), along with copies of the UCC-1 financing statements filed with respect to each of the Notes, are attached to the Proof of Claim filed by Berlin in the Debtor's case on December 27, 2017 (Claim No. 29-1, the "*Berlin

- 4 -

*Claim*"). The foregoing pieces of equipment financed by Berlin are collectively referred to as the "*Equipment*."

8.  Pursuant to the Berlin Claim, the Debtor in indebted to Berlin in an amount not less than $70,950.18 in principal obligations related to the Equipment Financings (Berlin Claim, pg. 7-8).

9.  The Notes, in addition to securing the Debtor's repayment obligations to Berlin under the Equipment Financings, secured the Debtor's repayment of *all* obligations to Berlin, including those for goods sold and services provided to the Debtor on credit. As set forth in the Berlin Claim, as of the Petition Date, the Debtor was indebted to Berlin for invoices and unpaid goods and services in the aggregate amount of $170,973.66 (Berlin Claim, pg. 9).

10. Accordingly, Berlin's aggregate secured claim against the Debtor is in the amount of $241,923.84.

**C.   Valuation of Berlin's Equipment**

11. The Debtor and Berlin disagree as to the current value of the Equipment that Berlin financed. As an initial matter, the Debtor's Schedules of Assets and Liabilities (Docket No. 1, the "*Schedules*") are wildly inconsistent in valuing the Equipment. In Schedule D, Item 2.5, the Debtor states that all of Berlin's Equipment is valued at $40,000.00 in the aggregate. The valuation of the individual pieces of Berlin's Equipment in Schedule B, however, does not match up at all with Schedule D; in fact, the Schedule B values of Berlin's Equipment far exceed the Schedule D value. Below is a table setting forth the values assigned by the Debtor to the individual pieces of Equipment (to the extent they could be identified by Berlin, given the poor quality of the Schedule B descriptions):

| Equipment | Original Purchase Price | Debtor's Scheduled Current Value |
|---|---|---|
| Accutek Automatic Spindle Capper | $41,900.00 | $16,000.00 |

- 5 -

| | | |
|---|---|---|
| KDF-6 Auto Capsules Filling Machine | $34,560.00 | $800.00[1] |
| Cremer CF1230 Channel Counter/Filler | $36,500.00 | $4,000.00 |
| G-Series Recirculating Heat Shrink Tunnel | $17,800.00 | $200.00[2] |
| Caterpillar Electric Forklift plus 36 Volt Charger | $5,076.00 | $2,500.00 |
| Pharmafill Cottoner Model CS1 | $18,250.00 | $3,000.00 |
| CVC 300 C Wrap Around Labeler | $17,355.00 | $6,000.00 |
| Lepel CS Plus Induction Sealer | $11,670.00 | $3,000.00 |
| Semi-automatic Pallet Stretch Wrapping Machine | $3,499.99 | $1,000.00 |
| 165 Cubic Foot Paul Abbe Double Cone Blender, Model # 96 RCB | $75,000.00 | $50,000.00 |
| **TOTAL** | **$261,610.99** | **$86,500.00** |

Accordingly, based on the Debtor's estimates (where they could be ascertained) in Schedule B, the Debtor assigns a value to Berlin's Equipment in an amount not less than $86,500.00 – a number more than double the $40,000.00 cited in Schedule D. Indeed, a single piece of Equipment – the Paul Abbe Double Cone Blender – is worth more than the Debtor's Schedule D valuation of *all* of Berlin's Equipment.

12. Leaving aside the inconsistencies between Schedules B and D, Berlin has no reason to believe that the valuations scheduled by the Debtor are based on any reasoned analysis or appraisal, and appear to be completely arbitrary. The Debtor does not disclose the methodology it employed in determining such value, does not point to any third-party appraisals performed on the Equipment, and does not identify whether the values sought are liquidation values or market values.

---

[1] Berlin cannot definitively conclude that this statement is accurate, given the lack of detail set forth by the Debtor in Schedule B. Several fillers have been scheduled by the Debtor with differing values.

[2] Berlin cannot definitively conclude that this statement is accurate, given the lack of detail set forth by the Debtor in Schedule B. Several heat shrink tunnels have been scheduled by the Debtor with differing values.

In short, even at an aggregate valuation of $86,500.00, Berlin has significant doubts as to the accuracy of the Debtor's estimates.[3]

13.    Regardless, it is clear from the Sale Motion that Berlin stands to receive nowhere near $86,500 – let alone $40,000 – on account of its Equipment. As Schedule B demonstrates, the Debtor owns dozens of pieces of equipment, some of which have been scheduled in amounts in the tens of thousands of dollars. On a percentage basis, based on the Debtor's estimates of value, Berlin's Equipment constitutes approximately 13.3% of the economic value of the Debtor's equipment. Accordingly, if that same percentage were applied to the $50,000 in purchase price being allocated to equipment, Berlin's anticipated recovery is only $6,650.00.

**D.     The Proposed Sale**

14.    On February 19, 2018, the Debtor filed the Sale Motion, pursuant to which it sought to sell substantially all of its assets to Simpson, subject to higher and better bids, for $1.6 million. The Debtor set a hearing on the Sale Motion on February 22, 2018, thereby providing creditors and other parties-in-interest with only three days' notice of its proposed sale.

15.    On February 20, 2018, the Debtor filed its *Declaration of Richard Feferman in Support of Motion for Entry of (1) Order Approving Stalking Horse, Marketing and Overbid Procedures, and Setting Final Sale Hearing; (2) Order Approving (A) Sale Free and Clear, (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Related Relief* (Docket No. 141, the "*Feferman Declaration*"). Attached to the Feferman Declaration was a draft APA, reflecting a substantially reduced purchase price of $1.1 million. Exhibit K contains an allocation of the purchase price, which allocates only $50,000 to the Debtor's owned equipment. A

---

[3]    Berlin is in the process of obtaining a third-party appraisal of the Equipment, which, if completed prior to the March 6, 2018 sale hearing, will be filed with the Court in further support of this Objection.

further revised APA was submitted as part of a Second Errata to the Feferman Declaration on February 21, 2018.

16. On February 22, 2018, the Court entered an order approving the sale to Simpson subject to the Debtor's proposed bidding procedures, and provided that parties objecting to the sale must file such objections by March 1, 2018. To the extent that competing bids are received, an auction will be held on March 6, 2018.

## ARGUMENT

17. The Debtor has not made even the barest showing that the sale of its assets – and specifically, Berlin's Equipment – meets the requirements set forth in section 363 of the Bankruptcy Code, and accordingly, the Sale Motion must be denied.

18. Given that Berlin holds valid, perfected security interests in the Equipment, the Debtor must satisfy section 363(f) of the Bankruptcy Code as a condition to selling the Equipment to Simpson free and clear of such interests. Section 363(f) states:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
> (1) Applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) Such entity consents;
> (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) Such interest is in bona fide dispute; or
> (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Accordingly, in order to sell property subject to a lien free and clear of such lien, the Debtor has the burden of satisfying one of the section 363(f) factors.

19. Not only can the Debtor not satisfy such factors, it has not even attempted to do so. The *Memorandum of Points and Authorities* filed in support of the Sale Motion (Docket No. 139)

- 8 -

contains only a bare recitation of section 363(f), and does not actually assert that any of the 363(f) elements have actually been met, let alone provide any factual support or legal authority supporting a section 363(f) finding.  This alone should convince the Court that the Debtor's burden under section 363(f) has not been met.

20. Regardless of the Debtor's failure to adequately plead its satisfaction of section 363(f), Berlin submits that as to its Equipment, not one of the 363(f) factors can be met.  Berlin discusses each of these factors below.

21. *Section 363(f)(1).*  Section 363(f)(1) permits a "free and clear" sale where applicable nonbankruptcy law permits such sale.  While the Debtor has not cited to any laws whatsoever in the Sale Motion, Berlin submits that Article 9 of the Uniform Commercial Code is the nonbankruptcy law that would govern the sale of Berlin's Equipment.  And Article 9 is clear: "free and clear" sales of collateral are not permissible absent the consent of the secured creditor.  CAL. COMM. CODE § 9315(a)(1) ("A security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien.").  Because Berlin does not consent to the sale as currently composed, the Debtor cannot sell the Equipment (absent full satisfaction of Berlin's claims) under nonbankruptcy law.

22. *Section 363(f)(2).*  Next, the Debtor could sell the Equipment free and clear of Berlin's security interests if Berlin consented.  Berlin *does not* consent to such sale. Absent the consent of Berlin, the Debtor cannot satisfy section 363(f)(2).  *See, e.g., In re East Airport Development, LLC*, 443 B.R. 823, 831 (9th Cir. BAP 2011); *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.),* 816 F.2d 238, 241 (6th Cir.1987) (section 363(f)(2) did not permit sale of property free and clear of a lien where the creditor did not consent); *In re Roberts,* 249 B.R. 152,

155 (Bankr. W.D. Mich. 2000) (section 363(f)(2) requires unequivocal manifestation of the lienholder's affirmation).

23. *Section 363(f)(3)*. Next, the Debtor would be permitted to sell the Equipment if the price at which it is to be sold is greater than the aggregate value of all liens on the Equipment. Here, the Debtor's Sale Motion, and the APA, unequivocally establish that this element is not met. First, the APA does not even specify the purchase price for Berlin's Equipment, but Berlin can deduce that it is some amount less (and likely substantially less) than $50,000, which is the purchase price allocated to *all* of the Debtor's owned equipment. Since the Debtor admits in its Schedule B that Berlin's Equipment has a value of approximately $86,500, and since Berlin contends that the value of its Equipment is even higher than that, there is no possible scenario, short of a re-allocation of the purchase price, that will result in the sale price of the Equipment exceeding the value of all liens.

24. Moreover, the existence of junior liens on the Equipment – namely, those of Bank of America – underscore the impossibility of the Debtor satisfying section 363(f)(3). In *In re PW, LLC*, the Ninth Circuit Bankruptcy Appellate Panel held that that a trustee cannot use section 363(f)(3) to "sell free and clear of the property rights of junior lienholders whose nonbankruptcy liens are not supported by the collateral's value." *In re PW, LLC*, 391 B.R. 25, 40 (9th Cir. BAP 2008). In so holding, the BAP confirmed that section 363(f)(3) can "*never* be used to authorize a sale free and clear . . . when the claims exceed the value of the collateral that secures them." *Id.* (emphasis in original). Since the claims of Berlin and Bank of America far exceed the value of the Equipment, the Debtor is unable to justify the sale under section 363(f)(3).

25. *Section 363(f)(4)*. Under section 363(f)(4), the Debtor could sell Berlin's collateral if the lien is subject to a bona fide dispute. The intent of 363(f)(4) is to permit property of the estate to be sold free and clear of interests that are disputed by the representatives of the estate so that

- 10 -

liquidation of the estate's assets need not be delayed while such disputes are being litigated. *In re Dewey Ranch Hockey, LLC,* (414 B.R. 577, 590 (Bankr. D. Ariz, 2009). However, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value. *Id. at 590-591; See also In re Clark,* 266 B.R. 163 (9th Cir. BAP 2001).

26. Here, the Debtor has not asserted any dispute – let alone a bona fide dispute – to Berlin's first-priority security interest in the Equipment. Accordingly, section 363(f)(4) does not support the sale of the Equipment.

27. *Section 363(f)(5).* Lastly, under section 363(f)(5), a debtor may sell property free and clear of an interest if the interestholder "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

28. *PW, LLC* is the leading Ninth Circuit case on the interpretation of section 363(f)(5). In that decision, the BAP held that as it relates to liens, "[w]e assume that paragraph (5) refers to a legal and equitable proceeding in which the nondebtor could be compelled to take *less* than the value of the claim secured by the interest." 391 B.R. at 42. Operating under that assumption, the Debtor must therefore demonstrate that "a mechanism exists to address extinguishing the lien or interest without paying such interest in full." *Id.* at 43 (quoting *In re Gulf States Steel, Inc. of Ala.,* 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002). The *PW* court went on to describe several examples of situations in which a mechanism could exist that would extinguish a lien absent full payment, all of which were contractual in nature, and none of which are relevant to the present dispute.

29. The *PW* court imposed two additional obligations on a debtor seeking to invoke section 363(f)(5). First, the debtor must demonstrate how satisfaction of the lien could be

compelled. *Id.* at 45. Second, the debtor must demonstrate that "there is an available type or form of legal or equitable proceeding in which a court could compel [the lienholder] to release its lien for payment of an amount that was less than full value of [its] claim." *Id.* at 45-46.

30. Here, the debtor has made none of the showings required under section 363(f)(5). It has not demonstrated – or even suggested – a mechanism by which Berlin could be forced to accept payment of less than the full amount of its secured claim while extinguishing Berlin's security interests. It has not demonstrated – or even suggested – how satisfaction of Berlin's security interests could be compelled. And it has not suggested an available legal or equitable proceeding through which it could seek that relief. Accordingly, section 363(f)(5) cannot be invoked by the Debtor to sell Berlin's Equipment.

**WHEREFORE**, Berlin respectfully requests that this Court enter an order denying the Sale Motion and for such other and further relief as is justified under the circumstances.

Dated: March 1, 2018                              LAW OFFICE OF NATHAN A. SCHULTZ, P.C.

                                                           /s/ Nathan A. Schultz
                                                           Nathan A. Schultz
                                                           Counsel to Berlin Packaging, LLC