Stephen C. Hinze (State Bar No. 131787)
STEPHEN C. HINZE, ATTORNEY AT LAW
217 Civic Center Drive, Suite 10
Vista, CA 92084
Tel: 760-945-9353
Fax: 760-454-2427

Bankruptcy Counsel
Debtor and for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No.: 17-06078-MM11 |
| | Chapter 11 |
| CORE SUPPLEMENT TECHNOLOGY, INC. a California Corporation | DECLARATION OF RICHARD FEFERMAN IN SUPPORT OF DEBTOR'S REPLY TO BANK OF AMERICA N.A. AND BANC OF AMERICA LEASING OPPOSITION TO DEBTOR'S MOTION FOR ORDER APPROVING (A) SALE FREE AND CLEAR (B) ASSUMPTION OF AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPRIED LEASES AND (C) RELATED RELIEF |
| Debtor and Debtor in Possession | |
| | IMAGED FILE |
| | Judge:   Hon. Margaret M. Mann<br>Dept    1, Room 218<br>Date:   March 6th, 2018<br>Time:   2:00 p.m |

I, Richard Feferman, declare and state as follows:

1.  I am the Chief Restructuring Officer of Core Supplement Technology, Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 case ("Debtor").

2.  The matters set forth herein are within my own personal knowledge, except as to those matters stated on information and belief, and as to those, I

believe them to be true. If called upon as a witness, I could and would testify competently thereto.

3. I began working with the Debtor on December 26, 2017, reviewing business operations, financial reports, meeting with employees and analyzing business operations.

4. I was formally appointed Chief Restructuring Officer on February 8th 2018.

5. I make this Declaration to advise the Court of the steps that have been taken to market the Debtor's assets for sale, and to explain the circumstances surrounding the negotiations on price.

6. Since December 26, 2017 insiders of the Debtor introduced me to four prospective buyers ("Initial Prospects"). Three of the Initial Prospects entered into non-disclosure agreements. Simpson Labs, LLC ("Simpson"), the current stalking horse is one of the Initial Prospects. The two others from this group have indicated that they are not interested in pursuing a transaction. And the fourth has not responded to emails.

7. On February 18, 2018 the Debtor's placed advertisements, for the sale of the Debtor's assets, on two online services that specialize in listing business for sale: Businesses For Sale; and BizBen. On February 22, 2018 as part of its marketing program, the Debtor at my request, prepared and mailed via the USPS, a one-page summary "Teaser" to 54 strategic prospects setting forth an overview of the Debtor's assets offered for sale. At my direction the Debtor identified these potential buyers thru industry publications.

8. Through Friday, March 2, 2018, the Debtor's efforts resulted in:

      i)     Fifty-four parties receiving the Teaser Summary, in addition to information provided to the four Initial Prospects.

      ii)    Seven parties executed non-disclosure agreements and were provided detailed financial and operational due diligence information. Five parties were given a copy of the sales procedures (One party had dropped out by this time). All prospects have been invited to tour the Debtors facilities and I am informed that the three Initial Prospects have. I have invited the other four prospects who signed non-disclosure agreements to visit the Debtor's facilities. Two have communicated that they are no longer interested and I have not received a return call from the other two.

      iii)   Only one party has made a formal cash offer to purchase substantially all of the Debtors Assets, Simpson.

9.    When I first became involved with the Debtor as the proposed Chief Restructuring Officer the Debtor and Simpson were discussing a purchase price of more than $2,000,000.00 however neither the Debtor's management nor Simpson understood the implication of the fact that much of the Debtor's manufacturing equipment was leased rather than owned by the Debtor. At about that time negotiations involving professionals on both sides began and a purchase price of $1,600,000.00 was settled on. However, on February 19, 2018 the Debtor disclosed to Simpson concerns that its intellectual property may have been compromised. The property compromised may have included (but not be limited to) batch records ("recipes" for products), customer lists, etc. Simpson reduced its offer to $800,000.00 and after heated negotiations $1,100,000.00 was agreed on.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of March 2018 at San Diego, California.

*Richard Feferman* /s/

Richard Feferman