1  Stephen C. Hinze (State Bar No. 131787)
2  STEPHEN C. HINZE, ATTORNEY AT LAW
3  217 Civic Center Drive, Suite 10
   Vista, CA 92084
4  Tel:  760-945-9353
   Fax: 760-454-2427
5
6  Bankruptcy Counsel
   Debtor and for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No.: 17-06078-MM11 |
| | Chapter 11 |
| CORE SUPPLEMENT TECHNOLOGY, INC. a California Corporation | DECLARATION OF RICHARD FEFERMAN IN SUPPORT OF MOTION TO APPROVE SALE FREE AND CLEAR OF LIENS AND ENCUMBERANCES, ASSUMPTION OF EXECUTORY CONTRACTS, AND ASSUMPTION OF LEASES, AND RELATED RELIEF |
| Debtor and Debtor in Possession | IMAGED FILE |
| | Judge:  Hon. Margaret M. Mann |
| | Dept    1, Room 218 |
| | Date:   March 8th, 2018 |
| | Time:   2:30 p.m |

I, Richard Feferman, declare and state as follows:

1. I am the Chief Restructuring Officer of Core Supplement Technology, Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 case ("Debtor").

2. The matters set forth herein are within my own personal knowledge, except as to those matters stated on information and belief, and as to those, I

believe them to be true.  If called upon as a witness, I could and would testify competently thereto.

3. I began working with the Debtor on December 26, 2017, reviewing business operations, financial reports, meeting with employees and analyzing business operations.

4. I was formally appointed Chief Restructuring Officer on February 8th 2018.

5. I make this Declaration to advise the Court of the steps that have been taken to market the Debtor's assets for sale, to explain the circumstances surrounding the negotiations on price, to discuss developments that have taken place since Tuesday's hearing, and to update my liquidation analysis.

6. Since December 26, 2017 insiders of the Debtor introduced me to four prospective buyers ("Initial Prospects"). Three of the Initial Prospects entered into non-disclosure agreements. Simpson Labs, LLC ("Simpson"), the current stalking horse is one of the Initial Prospects. The two others from this group have indicated that they are not interested in pursuing a transaction. And the fourth has not responded to emails.

7. On February 18, 2018 the Debtor's placed advertisements, for the sale of the Debtor's assets, on two online services that specialize in listing business for sale: Businesses For Sale; and BizBen. On February 22, 2018 as part of its marketing program, the Debtor at my request, prepared and mailed via the USPS, a one-page summary "Teaser" to 54 strategic prospects setting forth an overview of the Debtor's assets offered for sale. At my direction the Debtor identified these potential buyers thru industry publications.

8. Through Friday, March 2, 2018, the Debtor's efforts resulted in:

  i) Fifty-four parties receiving the Teaser Summary, in addition to information provided to the four Initial Prospects.

  ii) Seven parties executed non-disclosure agreements and were provided detailed financial and operational due diligence information. Five parties were given a copy of the sales procedures (One party had dropped out by this time). All prospects have been invited to tour the Debtors facilities and I am informed that the three Initial Prospects have. I have invited the other four prospects who signed non-disclosure agreements to visit the Debtor's facilities. Two have communicated that they are no longer interested and I have not received a return call from the other two.

  iii) Only one party has made a formal cash offer to purchase substantially all of the Debtors Assets, Simpson.

9. When I first became involved with the Debtor as the proposed Chief Restructuring Officer the Debtor and Simpson were discussing a purchase price of more than $2,000,000.00 however neither the Debtor's management nor Simpson appeared to understand the implication of the fact that much of the Debtor's manufacturing equipment was leased rather than owned by the Debtor. At about that time negotiations involving professionals on both sides began, the Debtor and Simpson actually focused on the assets that actually were for sale and a purchase price of $1,600,000.00 was settled on. However, on February 19, 2018 the Debtor disclosed to Simpson concerns that its intellectual property may have been compromised. The property compromised may have included (but not be limited to) batch records ("recipes" for products), customer lists, etc. Simpson reduced its offer to $800,000.00 and after heated negotiations $1,100,000.00 was agreed on.

10. Beginning Tuesday March 6, 2018, I have been conducting negotiations with an aim towards increasing the purchase price and creating carve outs for administrative professional and unsecured creditors. As of Wednesday evening March 7, 2018, negotiations are at an impasse for a deal that would increase the purchase price by $130,000 and provide a total of $260,000 that would be carved-out for the satisfaction of $152,000 of professional fees and the 503 (B)(9) claim that has been filed. The balance of $100,000 will be allocated for the benefit of unsecured creditors. Attached hereto as Exhibits 1 and 2 are amended versions of the distribution analysis I provided the Court on March 1, 2018. Several errors in the related to cash available have been corrected: 1) cash on hand on 2/27/2018 has been corrected for deposits received; 2) estimated commissions to be received on open orders; and 3) recovery of the deposit on the real property leasehold proposed to be assumed by Simpson. Additionally, a Chapter 7 liquidation analysis is provided.

11. Through examining financial reports provided by the Debtor and conducting interviews with its staff I believe that the Debtor's relationship with Simpson Labs, LLC has been beneficial to the Debtor. I have learned that the Debtor has sold more than $1,765,056.08 of products through its outsourcing relationship with Simpson Labs, LLC ("Simpson") that the Debtor would have not been able to otherwise. I am told that after the Debtor's petition date vendors pulled their trade credit. Any new vendors willing to provide credit to the Debtor required a 50% upfront deposit for new orders. Liberal trade terms were offered by Simpson and the following arrangement evolved: 1) Simpson did not require a deposit; and 2) although Simpson's trade terms state that payment is due on invoice [issued after the product is shipped to the Customer], in practice Simpson accommodated the Debtor by allowing payment to be made after the Customer

actually paid the Debtor. Also, Simpson provides expedited production and delivery of products to the Debtor's customers at no additional charge; products are shipped in four weeks rather than eight which is reported to be the industry standard. Customers typically provide the Debtor a 30% deposit on order, which is held until after the order has been filled and paid for. After payment, the Debtor tenders the payment (less 6%) to Simpson.

12. In connection with the outsourcing projects, Core was able to provide Simpson raw materials in the amount of $268,400.52 that are on the books for $263,657.35. It is my experience that liquidating raw materials inventory in a bankruptcy generally does not result in the full recovery of costs.

13. On information and belief, it is my understanding that the Debtor's relationship with Simpson was ordinary course as the Debtor had normally outsourced a portion of its manufacturing to other manufacturers. After filing bankruptcy, no one other than Simpson would give workable terms to the Debtor. The Debtor's relationship with Simpson has enabled the Debtor to preserve its valuable customer relationships and generate a modest profit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of March 2018 at San Diego, California.

Richard Feferman

Exhibit 1

Three Scenario Distribution Analysis

Prepared by Richard Feferman  
Amended 3/8/18

Preliminary Analysis of 2 Distribution Scenarios

Subject to Amendment

| RECOVERABLE ASSETS | No Accomodation | Accomodation | Chapter 7 Without Sale |
|---|---:|---:|---:|
| **Projected Cash on Hand** (in Dip Accounts - March 31, 2018); Chapter 7 Cash on Hand 3/6/18; The Accomodation Scenario includes an additional $130,000 in cash plus a $130,000 carve out from collateral. | $ 1,209,963.90 | $ 1,339,963.90 | $ 859,750.05 |
| **Office Equipment, Furnishings, and Supplies** - 0 recoverable value assumed | | | |
| **Equipment Valued in Excess of Liens Isuzu Truck.** Included in sale (est value $15k, $4k approx lien, Bof A 2nd not on title) | $ - | $ - | $ 11,000.00 |
| **Claims on D&O Policy** | UNKOWN | UNKOWN | UNKNOWN |
| **Avoidance Actions** | UNKOWN | UNKOWN | UNKNOWN |
| **Accounts Receivable** 969,786 assume 50% less 20% collection cost = net 30% | | | 290,935.80 |
| **Less Return of Deposits To Customers - Not Property of Estate** (Chapter 7 without Sale) | | | $ 375,382.00 |
| **Total Assets** | $ 1,209,963.90 | $ 1,339,963.90 | $ 786,303.85 |
| **PROPOSED ACCOMODATION** | | | |
| **Less Accomodation For Administrative Claims** (Not including fees subject to Carve Out) | | 158,000.00 | |
| **Less Accomodation For Benefit of Unsecured Creditors** (Could be used for prosecuting avoidance actions and D&O claims) | | 102,000.00 | |
| **Available for Secured Creditors after Administrative and Unsecured Accomodation** | $ 1,209,963.90 | $ 1,079,963.90 | 776,303.85 |
| **CLAIMS** | | | |
| **Secured Claims**, subject to challenge. Bank of America (dated 1/31/18 $1,804,996.79 plus per diem of $239.82 est payoff 3/31/2018 = $1,819,146.17 ); Berlin asserts a Proof of Claim in the amount of $240,000; Ally (dated 2/28/18 is $3,368.50 + .50/day est 3/31 = $3,384); Marlin (awaiting Payoff stmt est $5,000). Debtor is reserving all rights to challenge the claims listed above. Estimated Grand Total of Asserted Secured Claims, Subject to Challenge = $2,067,530.17 | $ 2,067,530.17 | $ 2,067,530.17 | 2,067,530.17 |
| **PERCENT RECOVERY BY SECURED CREDITORS** | 59% | 52% | 38% |
| **Chapter 11 Administrative Claims not covered by carve-out and cash collateral, Subject to Notice and opportunity for objection.** Estimate of outstanding Chapter 11 Administrative Claims on March 31, 2018: Stephen Hinze (Debtors Insolvency Counsel $140,000 [Feb 28, 2018 Bal is approx. $89,580.00]); Mayfield Bustarde (Debtor's General Counsel $15,000 [Feb 28, 2018 Bal is approx. $13,000.00]); 503 (b) (9) Claim of vendor $5,000; Corporate Recovery Associates, LLC (employer of Chief Restructuring Officer and permitted Staff Member Alan Myers, CPA [Estimated Outstanding Balance on 2/28/18 $25,000 - Firm's employement order provides for carve-out with cash collateral provision and is not in these figures]). | $ 158,000.00 | $ 158,000.00 | 158,000.00 |
| **PERCENT RECOVERY BY CHAPTER 11 ADMINISTRATIVE CREDITORS** | 0% | 100% | 0% |
| **Scheduled Unsecured Creditors (Priority and General Unsecured -** Unreconciled and subject to Challenge) Note this amount does not include impaired portion of secured claims. | $ 3,397,186.31 | $ 3,397,186.31 | $ 3,397,186.31 |
| **PERCENT RECOVERY BY SCHEDULED UNSECURED CREDITORS** before accounting for impaired protion of secured claims | 0% | Cash Dist is approx 3% if money is not used for avoidance actions and D&O claims | Cash Dist est less than 1%. $11k available for administration before avoidance actions and D&O Claims |

Exhibit 2

Available Cash Forecast

Prepared by
Richard Feferman

Amended 3/8/18 Forecast of Cash
for Distribution

Preliminary
Subject to Change

| | |
|---|---:|
| Cash on Hand 2/27/18 | $ 927,702.16 |
| Sale Proceeds | 1,100,000.00 |
| Estimated Commissions on remaining Deposits to be collected | 38,923.00 |
| Recovery of Deposit Bld 1 | 30,000.00 |
| **Estimated Total Cash and Cash Reciepts** | **$ 2,096,625.16** |
| **Less Estimated Disbursements** | |
| 401k Wind-up Admin | $ 5,000.00 |
| Customer Prepayments on Open Orders after Commissions | 300,305.60 |
| Equipment Leases and Arrerages | 65,223.44 |
| Insurance | 36,726.22 |
| ISP and Liscenses | 3,500.00 |
| IT and Records Retention | 17,500.00 |
| Merchant Fees and Bank Charges | 3,500.00 |
| Payroll and costs | 151,500.00 |
| Rent | 38,808.00 |
| Restructuring | 50,000.00 |
| Services | 548.00 |
| Simpson / Core Acct Settlement | 97,000.00 |
| Tax returns | 10,000.00 |
| Testing Services | 10,000.00 |
| Unpaid AP | 52,000.00 |
| UST Fees | 6,500.00 |
| utilities | 18,550.00 |
| Est costs to Vacate Bld 2 - Move equipment to Bld 1 | 20,000.00 |
| **Total Estimated Disbursements** | **886,661.26** |
| **Estimated Net Available for Distribution** | **$ 1,209,963.90** |