J. ALEXANDRA RHIM (SBN 180636)
CHRISTOPHER D. CROWELL (SBN 253103)
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985

Attorneys for Secured Creditors Bank of America, N.A.,
and Banc of America Leasing & Capital, LLC

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CORE SUPPLEMENT TECHNOLOGY, INC.,<br><br>Debtor and Debtor in Possession. | Case No. 17-06078-MM11<br><br>Chapter 11<br><br>**BANK'S RESPONSE TO, AND RESERVATION OF RIGHTS WITH RESPECT TO, ORDER TO SHOW CAUSE, IF ANY, WHY THIS CASE SHOULD NOT BE DISMISSED OR CONVERTED TO A CASE UNDER CHAPTER 7**<br><br>Hearing<br>Date: March 21, 2018<br>Time: 2:00 p.m.<br>Judge: Hon. Margaret M. Mann |

Bank of America, N.A., and Banc of America Leasing & Capital, LLC (individually and collectively, "Bank"), submit this Response to, and Reservation of Rights With Respect to, the Court's Order to Show Cause, If Any, Why This Case Should Not be Dismissed or Converted to a Case Under Chapter 7 issued March 9, 2018 (Dkt. No. 177).

Since the March 8, 2018 continued hearing on the Debtor's Motion to Approve Sale Free and Clear of Liens and Encumbrances, Assumption of Executory Contracts and Leases and Related Relief (Dkt. No. 151) ("Sale Motion"), the Bank has been consulted by the other key stakeholders in their efforts to consummate a sale under 11 U.S.C. § 363 that will maximize the value of the Debtor's assets and would be preferable to dismissal or conversion of the Debtor's bankruptcy case. The Bank is also working with the Debtor to reach an agreement regarding the Debtor's use of cash collateral to wind down the Debtor's operations after consummation of the sale.

A. <u>The Revised APA</u>

The Bank has reviewed a draft revised Asset Purchase Agreement ("<u>APA</u>") between the Debtor and stalking horse bidder Simpson Labs LLC ("<u>Simpson</u>"). The Bank is informed that the Debtor will be filing a revised Sale Motion in short order. The APA contemplates $1,454,000 in total consideration for the sale, consisting of (1) $1,000,000 cash ("<u>Cash Proceeds</u>"); (2) a waiver by Simpson of all claims, including an alleged $74,000 net administrative claim (the amount the Debtor allegedly owes Simpson for post-petition manufacturing services provided to the Debtor less the amount Simpson supposedly owes the Debtor for post-petition commissions on account of outsourcing work); and (3) the Debtor's retention of $380,000 in customer deposits ("<u>Customer Deposits</u>") for work in progress that Simpson will complete under the terms of the APA. The APA excludes from the sale the Debtor's cash and cash equivalents remaining on hand as of the closing date of any sale. ("<u>Cash on Hand</u>").

B. <u>The Bank's Position on the Sale</u>

The Bank has reserved, and continues to reserve, all rights with respect to its claims in this bankruptcy case and the Debtor's proposed asset sale. However, the Bank is receptive in principle to an agreement whereby the Bank would consent to the sale, release its lien on the Customer Deposits, and waive any administrative claim under 11 U.S.C. § 507(b) or otherwise, if and only if the Court: (1) approves the sale, finds Simpson (or any successful overbidder) to be a good-faith buyer within the meaning of 11 U.S.C. § 363(m), and orders payment of at least the Cash Proceeds to the Bank from escrow; (2) authorizes the immediate disbursement of the Cash Proceeds to the Bank from escrow; and (3) approves a cash collateral stipulation between the Bank and the Debtor (a) authorizing the Debtor to spend agreed-upon amounts from the Cash on Hand (and only such amounts) to pay current expenses to wind down its operations through a date certain, with the Bank to receive the remaining Cash on Hand thereafter; (b) waiving any right to surcharge the Bank's collateral under 11 U.S.C. § 506(c) or otherwise for costs or expenses incurred during the pendency of this case in chapter 11; and (c) containing certain other protections for the Bank as provided therein.

The requested release by the Bank of its lien on the Customer Deposits (which, according to the APA, equals $380,000 and represent approximately 30 percent of the Debtor's open customer

orders) would provide a substantial recovery to administrative creditors and (depending on total allowed administrative claims and any other priority unsecured claims) possibly a recovery to general unsecured creditors, too. If substantial funds are available for administrative creditors, Simpson's waiver of its claims, including the alleged $74,000 net administrative claim, also provides a substantial benefit to the estate.

The Court has raised questions about the Debtor's dealings with Simpson both pre- and post-petition. The Bank takes no position regarding such dealings, the likelihood that Simpson actually holds an allowable $74,000 net administrative claim or whether the estate may have viable claims against Simpson. Definitively resolving these issues, however, would require expensive and lengthy litigation with an uncertain outcome. The Bank does not believe that outcome is preferable to an immediate and certain recovery via the contemplated sale.

C.      <u>If the Court Does Not Approve the Sale, the Court Should Dismiss the Case</u>

If the Court does not approve the proposed sale, the Court should dismiss this bankruptcy case rather than converting it to chapter 7. Dismissal would be the only viable option in that circumstance.

If the Debtor, with the assistance of its Chief Restructuring Officer and special counsel, cannot consummate a sale of substantially all the Debtor's assets, there is no reason to believe that a chapter 7 trustee would be able to do so. Furthermore, the liquidation value of the Debtor's assets (substantially all of which are encumbered by the Bank's liens) on a piecemeal basis is likely a small fraction of their stated book value, especially after factoring in the chapter 7 trustee's commission. A chapter 7 trustee would no doubt seek to employ counsel and financial professionals to unravel the Debtor's pre- and post-petition transactions with Simpson and others. The net value of any avoidance actions or other claims the chapter 7 trustee might uncover (against Simpson or any other party) is speculative at best, likely achievable over an extended period of time, and there is no clear source of monies to fund any such litigation.

Chapter 7 administrative expenses have priority over ordinary chapter 11 administrative expenses under 11 U.S.C. § 726(b), so nothing would be left for chapter 11 administrative claimants, let alone general unsecured creditors. The Bank, of course, has a substantial super-priority administrative claim under 11 U.S.C. § 507(b) for failure of adequate protection. Notwithstanding the

contrary decision in In re Sun Runner Marine, Inc., 134 B.R. 4 (9th Cir. B.A.P. 1991), the Bank contends that its § 507(b) administrative expense is senior to chapter 7 administrative expenses, creating uncertainty as to whether any substantial funds would be available even to pay chapter 7 administrative expenses.

DATED: March 15, 2018

        HEMAR, ROUSSO & HEALD, LLP
        J. ALEXANDRA RHIM
        CHRISTOPHER D. CROWELL

BY:  /s/ J. Alexandra Rhim
      J. ALEXANDRA RHIM
      Attorneys for Secured Creditors Bank of America, N.A., and Banc of America Leasing & Capital, LLC

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800