Mette H. Kurth (SBN: 187100)
mkurth@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067-1506
Telephone: 310.598.4150
Facsimile: 310.556.9828

*Proposed* Special Counsel for Core Supplement Technology, Inc.

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>CORE SUPPLEMENT TECHNOLOGY, INC.,<br>a California Corporation<br><br>Debtor and Debtor in Possession | Case No.: 17-06078-MM11<br><br>Chapter 11<br><br>STATUS REPORT; DECLARATION OF RICHARD J. FEFERMAN AND ALAN MEYERS<br><br>Judge: Hon. Margaret M. Mann<br>Dept: 1, Room 218<br>Date: March 29, 2018<br>Time: xxx |

On March 26, 2018, this Court entered its Order Granting Debtor Core Supplement Technology, Inc.'s Emergency Motion to Approve Sale Free and Clear of Relief, Approve Settlement Pursuant to Bankruptcy Rule 9019, and Approve Assumption and Assignment of Customer Orders [Dkt #219]. On March 27, 2018, parties executed all documents required in connection with the approved sale, Simpson Labs, LLC delivered the balance of the purchase price to the Debtor, and the approved sale transaction was completed.

The annexed Declarations of Richard J. Feferman and Alan Meyers contained a more detail

discussion with respect to the sale closing as well as the Debtor's progress towards an orderly wind down in this case. As set for therein, the Debtor is in the process of obtaining identifying and rejecting contracts and leases that have no further value for the estate. It is obtaining proposals from Tiger Capital Group, LLC ("Tiger") and others to dispose of any assets that may have value to the estate, including assets that the Debtor owns as well as certain equipment that is subject to ostensible lease agreements that may be characterized as true financing agreements and leased equipment that may be disposed of with the lessor's consent in order to eliminate or reduce rejection damage claims against the estate. The Debtor has terminated its remaining employees and has made arrangements to use the services of personnel essential to the wind down on a limited or consulting basis in order to minimize administrative overhead.

The Debtor is not only working to maximize the value of its remaining physical assets but it is also evaluating intangible assets such as sources of litigation recovery. An analysis of avoidance recovery is being conducted. In addition, the Debtor believes that it has significant claims against various insiders or former insiders. The Debtor's professionals will be assessing the likely merits and recovery sources for any such claims. That analysis also takes into account, in particular, whether the Debtor's D&O insurance policies contains insured-versus-insured provisions, and any exclusions thereto. Such provisions will make a material difference to the path forward for this case, as they potentially bar access to D&O insurance policies for claims asserted by certain parties. A preliminary review indicates that the Debtor's policies do contain such provisions and exclusions thereto. The Debtor's professionals are in the process of verifying that they have a complete set of all relevant insurance documents so that they can fully evaluate this issue and its implications with respect to any liquidating plan, conversion, or dismissal of this case. In addition, the Debtor is in discussions with its secured lender regarding the terms of a cash collateral order in this case and the best path forward for the estate, its creditors, and parties in interest.

With the sale of substantially all of its assets concluded, the Debtor is now rapidly moving forward with the next phase of its wind down effort and expects to have made material

progress towards a final resolution of this case in the next few weeks.

**FOX ROTHSCHILD LLP**

By: /s/ Mette H. Kurth
Mette H. Kurth (SBN: 187100)
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067-1506
mkurth@foxrothschild.com
Telephone: 310.598.4150
Facsimile: 310.556.9828

*Proposed* Special Counsel for Core Supplement Technology, Inc.

# DECLARATION OF RICHARD J. FEFERMAN

I, Richard J. Feferman, declare and state as follows:

1. I am the Chief Restructuring Officer of Core Technology, Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 case. I began working with the Debtor on December 26, 2017, reviewing business operations, financial reports, meeting with employees and analyzing business operations. The matters set forth herein are within my own personal knowledge, except as to those matters stated upon information and belief. If called upon as a witness, I could and would testify competently thereto.

2. On March 15, 2018, the Debtor submitted its Sale Motion, a related Asset Purchase Agreement, and declarations in support thereof, all of which were considered by this Court. This Court entered an order approving and authorizing that sale dated March 26, 2018 (the "Sale Order") [Docket No. 219]. On March 27, 2018, the parties executed a Bill of Sale and a sublease, which were conditions precedent to the sale closing pursuant to the APA. In addition, the funds were wired to and received by the Debtor, and the sale was completed.

3. The Debtor, with my assistance, is in the process of obtaining identifying and rejecting contracts and leases that have no further value for the estate. It is obtaining proposals from Tiger and others to dispose of any assets that may have value to the estate, including assets that the Debtor owns as well as certain equipment that is subject to ostensible lease agreements that may be characterized as true financing agreements and leased equipment that may be disposed of with the lessor's consent in order to eliminate or reduce rejection damage claims against the estate.

4. It is my understanding from the Debtor that it has terminated its remaining employees and has made arrangements to use the services of personnel essential to the wind down on a limited or consulting basis in order to minimize administrative overhead.

5. I have also been informed that the Debtor is evaluating intangible assets such as sources of litigation recovery. An initial review of the Debtor's preference actions is being conducted.

6. The Debtor has informed me that it also believes that it has significant claims

against various insiders or former insiders. The Debtor's professionals will be assessing the likely merits and recovery sources for any such claims. That analysis also takes into account, in particular, whether the debtor's D&O insurance policies contains insured-versus-insured provisions, and any exclusions thereto. Such provisions will make a material difference to the path forward for this case, as they potentially bar access to D&O insurance policies for claims asserted by certain parties. A preliminary review indicates that the debtor's policies do contain such provisions and exclusions thereto. The Debtor's professionals are in the process of verifying that they have a complete set of all relevant insurance documents so that they can fully evaluate this issue and its implications with respect to any liquidating plan, conversion, or dismissal of this case.

7. In addition, I understand that the Debtor is in discussions with its secured lender regarding the terms of a cash collateral order in this case and the best path forward for the estate, its creditors, and parties in interest.

8. The Debtor is now rapidly moving forward with the next phase of its wind down effort and expects to have made material progress towards a final resolution of this case in the next few weeks.

1
2                                          _____
                                           Richard Feferman
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF ALAN MYERS

I, Alan Myers, declare and state as follows:

1. I am a Certified Public Accountant (CPA) licensed in the State of California since 1988. I have extensive experience as a practicing CPA in providing accounting and tax services to Trustees in Chapter 7 and Chapter 11 cases and their related adversary proceedings. These services have included tax return preparation and forensic accounting analysis involving fraudulent transfers, preferences, hidden assets and commingled accounts. I have analyzed the financial condition and financial affairs of bankruptcy debtors and other parties where such matters were in issue in avoidance actions and related claims brought by trustees on behalf of their respective bankruptcy estates. For many years, I maintained the computerized banking systems for two Chapter 7 Trustees. I have also had the opportunity to provide litigation support to attorneys representing clients in and out of bankruptcy court. I have provided similar services in state court lawsuits. I have previously qualified as an expert witness in both Bankruptcy and Superior Courts to provide expert opinion testimony. Additionally, I have been a Court Appointed Receiver, a Chapter 11 Examiner and a Chapter 11 Disbursing Agent.

2. My first visit to Core Supplement Technology, Inc. (Core) on February 13, 2018 included meeting with Nikki McEvers and Richard Bass. Ms. McEvers is responsible for HR and Mr. Bass is responsible for IT. At that time, the CFO, Kathy Haycook, was the sole accounting department employee and was in the hospital, with what I understood to be, serious health issues. Since my first visit, Ms. Haycook has been hospitalized at least one more time and has not been at work for many days.

3. My first visit to Core's accounting department revealed a single office in disarray. There were two desks, a number of file cabinets and numerous banker's boxes stacked against a wall. There were also many stacks of lose paper and boxes in no specific order. Mrs. Haycook's health issues appear to have limited her ability to complete her duties timely and completely, which did in part, ultimately, delay the preparation of the monthly operating reports.

1

Richard Bass. Ms. McEvers became responsible for accounts receivables and Mr. Bass became responsible for accounts payable. From discussions with both employees, I can report that both Ms. McEvers and Mr. Bass feel the accounts receivable and accounts payable system records are basically up to date. The receivable and payable records will need to be updated if new payments and invoices are received.

5. I was at Core on days that Ms. McEvers and Mr. Bass continued to update the accounting records. On one day, Mrs. Haycook was also present. On days when Mrs. Haycook was not able to come to work and Ms. McEvers had accounting system questions, she would try to contact Mrs. Haycook by phone. It is my understanding that most times she was able to reach Mrs. Haycook. Overall, the use of Core employees to help maintain the accounting system and the bank accounts appears to have been very useful and cost effective.

6. On March 24, 2018, with the help of Joe O'dea, I was able to finalize the APA asset list. I understand that Brian Jackiw, Esq, counsel for the creditor, Berlin, accepted this final asset list on behalf of his client on March 26, 2018.

7. Going forward, the accounting system will be accessed to review pre-petition transactions for possible avoidance transfers. However, activity in the accounting system will be very limited on a post-sale closing basis. Not entering current information into the accounting system will help to make sure that no prior information in the system has been altered or changed.

8. Future work that is expected to be performed includes maintaining and updating accounts payable records; maintaining complete and accurate bank account records; making disbursements as required; arranging for and determining the costs to prepare the 2018 forms W-2, related payroll tax returns and forms 1099; and preparing and file the 2017 corporate income tax returns.

_____
Alan Myers