TENTATIVE RULING
ISSUED BY JUDGE MARGARET M. MANN

Debtor: DEBTOR CORE SUPPLEMENT TECHNOLOGY, INC.

Bk No.: 17-6078-MM7

Hearing: 10:00 AM, Thursday, May 30, 2019

Motion: Application for Final Professional Compensation ("Application") filed by Branfman Mayfield Bustarde Reichenthal LLP ("MB")

The court has considered the Application filed by MB, which the court appointed as Chapter 11 Corporate Counsel for Debtor Core Supplement Technology, Inc., Debtor in Possession. Most of MB's time, or a total of $11,623.50, was spent on business operations. The balance was categorized as follows:

    CASE ADMINISTRATION - $63.00

    CORPORATE FINANCE  -  $283.50

    LITIGATION  -  $1,795.50

    FEE APPLICATION  - $630.00

MB requested a total of $14,395.50 in fees for 45.7 hours of time and expenses of $725.61.

The court has an independent duty to review fee applications under § 330. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994). This court has serious concerns about whether the services MB provided were of benefit to the estate, as it has expressed repeatedly from the time it approved MB's employment up to when it converted this case to one under Chapter 7.

**MB's Employment**

MB was employed pursuant to a February 12, 2018 order authorizing Debtor to retain MB as its corporate counsel effective October 3, 2017. The scope of services to be provided was described in the Application as follows:

> The debtor is a corporation and is thereby required to be represented by a licensed attorney. The scope of employment moving forward post-petition remains the same as described in the fee agreement attached as Exhibit A. Post-petition representation includes but is not limited to attending shareholder and director meetings[] and advising on general matters concerning corporate governance necessary to implement the Debtors Chapter 11 plan.

Attached to the Application as Exhibit A was an engagement letter dated August 18, 2014 stating MB agreed to provide Debtor "Corporate Counsel" services.

### Debtor's Operation During MB's Employment

The court's concerns about the value of MB's services to the estate paralleled the court's concerns regarding how Debtor was operating during the administration of the chapter 11 estate. While the court repeatedly expressed these concerns, MB does not address them in its Application. Prior to conversion, Debtor's operating reports reflected that it had lost over $400,000 since the petition date. Debtor filed a motion to sell substantially all of its assets that court denied as it was unable to find Debtor had shown that the estate would receive optimal value for the asset sold, that the buyer was a good faith purchaser for value under 11 U.S.C. § 363(m), or that the release the buyer received was "fair and equitable" to creditors or in the best interests of the estate. During the proceedings in connection with the sale, Debtor did not identify any other buyer who had made an offer to purchase Debtor's assets or any other course of rehabilitation Debtor had pursued apart from the sale. Instead, Debtor repeatedly advised the court that a sale must occur imminently as Debtor's losses were multiplying. *See* Decl. Stephen Hinze Supp. Ex Part App. Shortened Time, Jan. 11, 2018, Doc. 91, ¶ 4. The court appointed a Chief Restructuring Officer ("CRO") but he was unable to provide credible assistance to the court and continued to mismanage the Debtor, including by presenting a sale that could not be affirmed. At the time of conversion, Debtor had ceased operations and there was no substantial likelihood of rehabilitation.

Debtor's poor management extended to its employment of MB and Debtor compensated MB even before it was employed by the estate, although the court understands these fees were returned to the estate.

### Legal Standard

Section 330(a)(4) prevents courts from awarding compensation for services that are duplicative or that do not result in a material benefit to the estate (unless the professional can show the services were reasonably likely to benefit the estate at the time rendered). *Ferrette & Slatter v. United States Tr. (In re Garcia)*, 335 B.R. 717, 720 (B.A.P. 9th Cir. 2005); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 104 (B.A.P. 9th Cir. 2000). MB bears the burden of bear the burden of proving the fees it requests are proper under § 330(a)(4)(A). *In re Eliapo*, 298 B.R. 392, 402 (B.A.P. 9th Cir. 2003) (citing *In re Dalessio*, 74 B.R. 721, 724 (B.A.P. 9th Cir. 1987)) *rev'd on other grounds*, 468 F.3d 592, 595 (9th Cir. 2006); *see also In re Scoggins*, 517 B.R. 206, 221 (Bankr. E.D. Cal. 2014).

### Business Operations Category

When a professional's services benefit the interests of an individual over the estate, courts reduce or deny compensation. *See, e.g., In re Select Tree Farms, Inc.*, 568 B.R.

1, 5 (Bankr. W.D.N.Y. 2017) (attorney representing a corporate debtor and related individuals was denied compensation for defending against a stay relief motion for a vehicle driven by one of the individual clients where liquidation would have provided value to the corporate estate); *In re Cmty. Home Fin. Servs.*, No. 12-01703-NPO, 2017 Bankr. LEXIS 1192, at *22 (Bankr. S.D. Miss. May 1, 2017) (services provided which were designed to benefit an insider's guaranty lawsuit were not compensable by the corporate debtor's attorney under § 503); *In re Digerati Techs., Inc.*, 537 B.R. 317, 361 (Bankr. S.D. Tex. 2015), *aff'd sub nom. Herrera v. Dishon*, No. 4:15-cv-00227, 2016 U.S. Dist. LEXIS 174627, 2016 WL 7337577 (S.D. Tex. Dec. 16, 2016) (debtor's counsel's fees reduced by 5% where the reorganization plan proposed that provided two officers with whom the attorney had "an overly cozy relationship" "absurdly high compensation packages").

Based on the court's review of MB's time descriptions in this category, much of the services provided benefited only individual board members and not the estate as the services were provided to resolve disputes among the board members and not to pay creditors. In MB's own words: "most of [MB's] time was spent on corporate governance issuance [sic] amongst the board members as the board had dissention at the time." More specifically, MB addressed board member inspection rights, the dissenting investor's interference with the bankruptcy proceedings, the resignation of the President, and appointment of the CRO. The appointment of the CRO was necessitated by a dysfunctional board as averred to by the person who signed MB's employment application, Joseph O'Dea. O'Dea provided the direction to MB even though Debtor was ostensibly her client, and the time descriptions suggest MB took sides in the board dispute in favor of O'Dea.

This case is most similar to *Digerati Techs.*, 537 B.R. at 361-62, where the court disallowed fees that were spent to promote the interests of two of its shareholder instead of an independent assessment of what was appropriate for the estate. Here, MB followed the direction of O'Dea when the estate was floundering in losses. MB also gave advice on how O'Dea could deal with the director with whom O'Dea disagreed.

Despite the suggestion of disinterestedness, the court sees some benefit to the estate from MB's effort to have a functioning board. Because the time descriptions do not allow for a more precise calculation, the court could award fees of half of the amount requested, or $5,811.75. Alternatively, the court would continue the matter for further support of the fees requested from MB, since it has not met its burden of proof that its services benefited the estate rather than the Debtor or O'Dea.

**Litigation Services**

The court did not permit the employment of MB for litigation services and the $1,795.50 in this category must be disallowed. *McCutchen, Doyle, Brown & Enersen v. Official*

*Comm. of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 211 (B.A.P. 9th Cir. 1994) ("court approval of the employment of counsel for a debtor in possession is sine qua non to counsel getting paid"). MB's employment application specifically stated that a different fee agreement would need to be signed for these services. The supplemental description of the services to be provided and the benefit to the estate also did not reference litigation services.

### Corporate Finance

The fees for Corporate Finance in the amount of $283.50 must be disallowed since these are duplicative of those provided by general counsel and special counsel.

### Conclusion

The court will allow fees of $6,504.75, plus costs in the reduced amount prayed for of $725.61, to MB. As noted above, however, the court will also provide MB, if requested at the hearing, an opportunity to supplement its time entries and provide a declaration to substantiate more of the time in the business operations category.