# EXHIBIT A

**CSD 1001A** [11/15/04]
Name, Address, Telephone No. & I.D. No.

Stephen C. Hinze (SBN 131787)
STEPHEN C. HINZE, ATTORNEY AT LAW, APC
217 Civic Center Dr. Suite 10
Vista, CA 92084
Tele: (760) 689-0705
Fas: (760) 424-2427

Order Entered on February 23, 2018
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

CORE SUPPLEMENT TECHNOLOGY, INC.

Debtor.

BANKRUPTCY NO. 17-06078-MM11

Date of Hearing: February 1, 2018
Time of Hearing: 2:30 p.m.
Name of Judge: Hon. Margaret Mann

**COURT MODIFIED**

## ORDER ON

### Debtor's 11 USC 363 and 105(a) Motion for Appointment of a Chief Restructuring Officer

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through __4__ with exhibits, if any, for a total of __18__ pages, is granted. Motion/Application Docket Entry No. __86__

//
//
//
//
//
//

DATED: February 23, 2018

_[signature: Margaret M. Mann]_

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

**Judge, United States Bankruptcy Court**

Submitted by:

Stephen C. Hinze, Attorney At Law, APC
(Firm name)

By: /s/ Stephen C. Hinze
    Attorney for ☑ Movant ☐ Respondent

CSD 1001A

ORDER ON Debtor's 11 USC 363 and 105(a) Motion for Appointment of a Chief Restru
DEBTOR: CORE SUPPLEMENT TECHNOLOGY, INC.                        CASE NO: 17-06078-MM11

The Debtor's motion for AN ORDER, PURSUANT TO SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING THE DEBTOR'S RETENTION OF RICHARD FEFERMAN AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR is granted as follows:

The Debtor's retention of Richard Feferman of Corporate Recovery Associates, LLC ("CRA") as Chief Restructuring Officer ("CRO"), along with the use of CRA staff Alan Meyers ("Permitted Staff") as provided in that certain written fee agreement (the "Initial Fee Agreement"), as modified and supplemented by the CRO's supplemental declaration filed on January 23, 2018 (the "Supplemental Declaration" together with the Initial Fee Agreement shall be referred to collectively as the "Fee Agreement") is approved Nunc Pro Tunc to December 26, 2017. True and correct copies of the Initial Fee Agreement and the Supplemental Declaration are attached hereto, respectively, as Exhibits 1 and 2

~~The CRO is authorized to act as the Debtor's Chief Restructuring Officer, at the pleasure of the Debtor's independent board of directors pursuant to the terms and conditions of the Fee Agreement.~~

Upon entry of this Order, the CRO is authorized to request and be compensated from cash collateral and/or any other funds available pursuant to the terms of the Fee Agreement and this Order as follows:

(1)   The Debtor is authorized and directed to immediately pay to CRA $23,870.97 for services rendered by CRA from December 26, 2017 through February 1, 2018 (December prorated amount of $3,870.97 and January 2018's flat rate of $20,000.00) plus reasonable costs not to exceed $1,000.00, plus the $20,000 deposit called for in the Fee Agreement to be held by CRA as security to be applied toward the final bill or to be applied to any bill more than 15 days past due (the "Deposit").  Upon receipt of the amounts set forth in this paragraph and the Deposit,, the CRO shall promptly file with the Court, the US Trustee, and counsel for Bank of America a Report of Tasks Performed supported by detailed time sheets and expense reports; provided, however, that it is understood that CRA is entitled to a flat monthly fee of $20,000.

(2)  As for fees and costs incurred after February 1, 2018, each month CRA may file a Request for Payment for the fees and expenses incurred by the CRO and Permitted Staff during the prior month pursuant to this Order.  The Debtor is authorized and directed to make payment to CRA pursuant to the terms of the Fee Agreement, 14 days after a Report of Tasks Performed (supported by detailed time sheets and expense reports) subject to notice and **reslution of any** ~~opportunity to~~ object**ion** ~~is~~ filed as follows:

    a) Debtor, on behalf of CRA, shall file a Report of Tasks Performed supported by detailed time sheets and expense reports with the Court and provide 14 calendar days written notice of Request for Payment and Opportunity to Object stating the amount sought for compensation and reimbursement of expenses, served by mail (without attachments) to Bank of America, N.A., the US Trustee, the creditor's committee if any, the largest 20 creditors if no creditor's committee, and all parties requesting special notice.
    b) A creditor or other party-in-interest shall be entitled to assert a reasonable objection to the Request for Payment; no such objection shall be asserted for any improper purpose.  Failure to file and serve a Declaration in Opposition to Payment and a Request and Notice of Hearing specifically identifying the items of compensation and/or expenses objected to within the 14 day period following service of the Notice of Request for Payment and Opportunity to Object results in the loss of any opportunity for hearing, and the Debtor is authorized and directed to make full payment to CRA without further approval by the Court.
    c) Any party objecting to payment must  obtain a hearing date and time  from  the appropriate Courtroom  Deputy for the judge assigned to this case by calling (619) 557-7407 -DEPARTMENT ONE (Room 218) within fourteen (14) days from the date of service of the Notice of Request for Payment and Opportunity to Object.
    d) Any objecting party is further required to  serve a copy of their Declaration  in  Opposition  to  the Notice and Request for Payment as well as a separate Request  and  Notice  of Hearing [Local  Form  CSD1184] upon the CRO, counsel for the Debtor and all parties who were served with the Notice of Request for Payment and Opportunity to Object. The Debtor is authorized and directed to pay, and shall immediately pay, to CRA all undisputed fees and expenses stated in the Report of Tasks and Request for Payment **after expiration of the 14-day objection period. If an objection is filed, no payment shall be until further order of this court.**

CSD 1001A

Signed by Judge Margaret M. Mann February 23, 2018

CSD 1001A (Page 3)
Core Supplement Technology, Inc.                                    Case No. 17-6078-MM11

(3) The fees and expenses referenced herein are authorized and directed to be paid from cash collateral and/or any other funds available through the end of April 2018 ("Fees Carve-Out Deadline"). All Fees and Expenses authorized for payment pursuant to this Order may be paid from cash collateral held by Bank of America. Fees and expenses incurred prior to any termination of the right to use cash collateral, once authorized and directed to be paid hereunder to the extent they have not been paid are subject to a carve out from Bank of America's liens and security interests in Cash Collateral held by Bank of America. All payments are subject to the approval process set forth in this Order. The Debtor reserves the right to seek an extension of the Fees Carve-Out Deadline. The Fees Carve-Out Deadline may be extended by stipulation among Bank of America, the Debtor and CRA with no further need for order of the Court or notice to creditors.

(4) All fees authorized for payment purusant to this order are subject to disgorgement.

Approved as to Form:

Tiffany L. Carroll
Acting United States Trustee

*[signature]*

David Ortiz, Esq.
Attorney for the Acting
United States Trustee

Hemar, Rousso & Head, LLP

_____
J. Alexandra Rhim, Esq.
Attorney for bank of America NA &
Banc of America Leasing & Capital

Signed by Judge Margaret M. Mann February 23, 2018

CSD 1001A (Page 3)
Core Supplement Technology, Inc.　　　　　　　　　　　　Case No. 17-6078-MM11

(3) The fees and expenses referenced herein are authorized and directed to be paid from cash collateral and/or any other funds available through the end of April 2018 ("Fees Carve-Out Deadline"). All Fees and Expenses authorized for payment pursuant to this Order are subject to a carve out, and excluded from, any and all security interests in cash collateral held by Bank of America. Fees and expenses incurred prior to any termination of the right to use cash collateral, once authorized and directed to be paid hereunder, are also carved out of, and excluded from, any security interest in Cash Collateral held by Bank of America. In the event that the right to use of cash collateral is terminated, fees and costs incurred within 15 days after termination of that right are authorized and directed to be paid to CRA and are also carved out, of and excluded from, any security interest in Cash Collateral held by Bank of America. All payments are subject to the approval process set forth in this Order. The Debtor reserves the right to seek an extension of the Fees Carve-Out Deadline. The Fees Carve-Out Deadline may be extended by stipulation among Bank of America, the Debtor and CRA with no further need for order of the Court or notice to creditors.

(4) All fees authorized for payment purusant to this order are subject to disgorgement.

Approved as to Form:


Tiffany L. Carroll
Acting United States Trustee



_____
David Ortiz, Esq.
Attorney for the Acting
United States Trustee

Hemar, Rousso & Head, LLP

*/s/ J. Alexandra Rhim*
J. Alexandra Rhim, Esq.
Attorney for Bank of America NA &
Banc of America Leasing & Capital

Signed by Judge Margaret M. Mann February 23, 2018

# Exhibit 1
# CRO Engagement Agreement

# AGREEMENT FOR THE ENGAGEMENT OF A
# CHIEF RESTRUCTURING OFFICER

UPON APPROVAL BY THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, THIS AGREEMENT is deemed effective December 26, 2017 between Core Supplement Technology, Inc. ("Corporation"), a California corporation having its offices at 4645 North Avenue, Oceanside California, 92056 and Corporate Recovery Associates, LLC ("CRA"), 3830 Valley Centre Drive, Suite 705-152, San Diego, CA 92130.

## CRA's Availability and Services

CRA agrees that during the term of this Agreement CRA will be available at Corporation's request to render working services to Corporation. It is understood by the parties that this agreement is subject to the approval of the Bankruptcy Court for the Southern District of California ("Bankruptcy Court"). The services to be provided include, but are not limited to:

1. Description of Services

    a. Officers. In connection with this engagement, CRA shall make available to the Corporation Richard Feferman to serve as the Chief Restructuring Officer of the Corporation (the "CRO").

    b. Duties and Powers.

        (i)  The CRO shall manage the business and financial affairs of the Debtor.

        (ii) The CRO's shall direct the sale of the assets of the Debtor and such other plans as may maximize the enterprise value of the Debtor. With respect to any sale of the assets of the Debtor, the CRO will handle all aspects of the sale proceedings in the Debtor's case, including the following: marketing of the Debtor's assets; facilitating bidders' due diligence; negotiations with any potential bidder for the Debtor's assets; evaluating any bid made for the Debtor's assets; conducting an auction for the sale of the Debtor's assets; and selecting, subject to the approval of the Bankruptcy Court, the successful bid(s) for the Debtor's assets.

        (iii) The CRO shall supervise the administration of the Chapter 11 case including preparation of the various schedules and reporting required by the Office of the United States Trustee.

        (iv) The CRO shall review claims asserted against the Debtor.

      (v)    The CRO shall review and evaluate pleadings, financial reports and other documents filed by creditors or parties-in interest in the Debtor's Chapter 11 case.

      (vi)    The CRO shall appear in any proceedings or hearings in the Bankruptcy Court in the Debtor's Chapter 11 case as appropriate.

      (vii)    If needed, the CRO shall assist the Debtor in the negotiation, formulation, confirmation and implementation of a Chapter 11 plan.

      (viii)    The CRO shall coordinate with Debtor's counsel and assist Debtor's counsel with respect to various pleadings as requested.

      (ix)    The CRO shall communicate with creditors; any committees; and with other parties-in-interest in the case.

      (x)    The CRO shall manage the affairs of the Debtor and perform the typical duties of a CRO, and such other services as may be mutually agreed by the Parties.

    c.  <u>Reporting.</u>  The CRO shall report to the Board of Directors of the Corporation.

    d.  <u>Employment by CRA.</u>  The CRO will continue to be employed by CRA and while rendering services to the Corporation will continue to work with other personnel at CRA in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement. With respect to the Corporation, however, the CRO shall operate pursuant to the terms of this Agreement and CRA shall have no liability to the Corporation for any acts or omissions of the CRO.

    e.  <u>Projections: Reliance; Limitation of Duties.</u>  The Corporation acknowledges that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Corporation's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, the CRO will be relying on information provided by other members of the Corporation's management in the preparation of those projections and other forward-looking statements.

2. <u>Compensation</u>

CRA shall be paid a nonrefundable fee of $20,000 per month ("Flat Rate") for the services of Mr. Feferman (which shall be prorated for any partial months based on the number of days in the prorated month). The Corporation shall also pay CRA an initial advanced deposit of $20,000 which will be applied to the final bill. At the sole

discretion of CRA money held in this deposit may be used to satisfy any balances 15 days old or older. Upon the use of such funds the Debtor is obligated to restore the advanced deposit to $20,000. The Corporation grants CRA a security interest in the advanced deposit.

In addition, Alan Myers of CRA shall provide limited services as a financial analyst at his non-litigation hourly rate of $240 per hour and limited to no more than 20 hours per month.

The total hourly billings of CRA are subject to a $275 per hour "Blended Rate Cap" for the total aggregated hourly billings for the engagement. The Blended Rate Cap is not applicable to employees of CRA that are provided on a Flat Rate, such as the arrangement for services rendered by Mr. Feferman. In the event an employee has provided work on a Flat Rate basis for a period of time and at hourly rates for other times, only the time billed at hourly rates are subject to the Blended Rate Cap.

CRA and the Corporation agree that, on the date that is sixty (60) days from the date of the order appointing the CRO, they may revisit the compensation paid to CRA and if it appears to be advantageous to the Bankruptcy Estate, and approval by the Court if required, CRA will be paid $275.00 per hour blended rate covering all services rendered by personnel provided by CRA.

In addition to payment for services rendered the Corporation agrees to reimburse CRA for any reasonable out-of-pocket expenses incurred in connection with the services provided such as reasonable travel expenses, computer research, messenger and telephone charges. Mileage expenses will be reimbursed at 2018 IRS rates.

3. Term

The engagement will commence as of December 26, 2017 and continue until terminated pursuant to the provisions below.

4. No Audit. Duty to Update

It is understood that the CRO and CRA are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC, or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Corporation. The CRO and CRA are under no obligation to update data submitted to them or review any other areas.

5. No Third Party Beneficiary.

   The Corporation acknowledges that all advice (written or oral) given by CRA to the Corporation in connection with this engagement is intended solely for the benefit and use of the Corporation (limited to its Board of Directors and management) in considering the matters to which this engagement relates. The Corporation agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without CRA's prior approval (which shall not be unreasonably withheld), except as required by law.

6. Conflicts.

   CRA is not currently aware of any relationship that would create a conflict of interest with the Corporation or those parties-in-interest of which the Corporation has made us aware. Because CRA is a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that CRA may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Corporation, including creditors for the Corporation. In the event the Corporation accepts the terms of this engagement, CRA will not represent, and CRA has not represented, the interests of any such entities or people in connection with this matter.

7. Confidentiality / Non-Solicitation.

   The CRO and CRA shall keep as confidential all non-public information received from the Corporation in conjunction with this engagement, except (i) as requested by the Corporation or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other that as a result of a breach of this provision.

8. Hold Harmless.

   The Corporation shall hold harmless CRA and the CRO. The CRO shall be covered as an officer under the Corporation's existing director and officer liability insurance policies. Within 30 days of the date of this agreement the Corporation shall purchase liability insurance covering the CRO for a period of 2.5 years from the date of retention. The indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Corporation's charter, bylaws, or other organizational documents or policies shall affect the CRO's or CRA's rights hereunder.

9. <u>Indemnity</u>:

Subject to the terms and conditions of any application and order entered in a bankruptcy case commenced by the Corporation, the Corporation agrees to indemnify and hold harmless each of CRA, its affiliates and its and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members and each of their respective successors and assigns (each, an "Indemnified Person") against and from all losses, claims, damages, liabilities or expenses and all actions, claims, proceedings and investigations brought or threatened by or on behalf of any person (including Corporation Claims (as defined below)) arising out of, relating to or in connection with this Agreement or CRA's engagement hereunder collectively, "Indemnification Claims"), and to promptly reimburse each Indemnified Person for all reasonable legal and other expenses as incurred by such Indemnified Person in connection with investigating, preparing to defend or defending any such Indemnification Claims (including expenses of CRA personnel required to testify or otherwise assist in any litigation), whether or not such Indemnified Person is named as a party thereto; provided, however, that the Corporation shall not be liable for Indemnification Claims to the extent that such claims are finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. The Corporation also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Corporation or the Corporation's security holders or creditors arising out of, relating to or in connection with this Agreement or CRA's engagement hereunder (collectively, "Corporation Claims") except to the extent that such liability is finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. To the extent permitted by applicable law, CRA's liability with respect to Corporation Claims shall be limited to the amount of any fees actually received by CRA pursuant to this Agreement. If multiple Indemnification Claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with CRA's engagement hereunder, and indemnification is permitted under applicable law with respect to at least one such claim, the Corporation agrees that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent that such arbitration award, or any portion thereof, is expressly stated to be based solely on a claim as to which indemnification is not available.

If the foregoing indemnification and reimbursement for Indemnification Claims are for any reason insufficient or unavailable to any Indemnified Person with respect to any Indemnification Claims, the Corporation agrees to make contributions to any such Indemnification Claims paid or payable (or proposed to be paid) in such proportion as is appropriate to reflect the relative economic benefits received by the Corporation and its security holders and creditors, on the one hand, and the Indemnified Persons, on. the other hand; provided, however, that, to the extent permitted by applicable law, the Corporation agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the

Chief Restructuring Officer Engagement Agreement         Page 5 of 8

Indemnified Persons will not be liable for more than the fees actually received by CRA pursuant to this Agreement. The "relative economic benefits" received by the Corporation and its security holders and creditors, on the one hand, and the Indemnified Persons, on the other hand, shall be deemed to be in the same proportion as is appropriate to reflect the relative economic benefits and the relative fault of the Corporation and its security holders and creditors, on the one hand, and the Indemnified Persons, on the other hand, as well as other equitable considerations; provided, however, that, to the extent permitted by applicable law, the Corporation agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CRA pursuant to this Agreement.

The Corporation further agrees that, without the prior written consent of CRA (not to be unreasonably withheld, conditioned or delayed), the Corporation will not settle, compromise or consent to the entry of any judgment in any pending or threatened action, claim, proceeding or investigation with respect to which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such action, claim, proceeding or investigation) unless such settlement, compromise or judgment includes an unconditional release of all Indemnified Persons from all liability resulting from such action, claim, proceeding or investigation.

The foregoing rights (i) shall be in addition to any other rights any Indemnified Person may have, (ii) shall not limit any other rights that any Indemnified Person may have at law or otherwise and (iii) shall survive any termination of the engagement or this Agreement.

10. <u>Richard Feferman as Officer of the Corporation.</u>

Notwithstanding anything herein to the contrary, CRA hereby agrees that, without the consent of the Board of Directors of the Corporation, CRA will not substitute any party for Richard Feferman to serve as CRO of the Corporation; provided, however, that nothing herein shall prohibit CRA from staffing its engagement with the Corporation with personnel in addition to Richard Feferman as needed to effectively manage the case.

**Termination of Agreement**

This Agreement may only be terminated as follows:

(1) By Feferman providing 30 days' written notice in accordance with the notice provisions of this Agreement; or

(2) By the Debtor upon the Court's entry of an order finding good cause for termination.

## Deadlock of Board

In the event that the Debtor's board of directors deadlocks on an issue, Feferman may seek Court approval to break the deadlock.

## Retention of Jurisdiction

In the event of a dispute between the Corporation (and its officers, directors, shareholders and affiliates) and CRA arising from or related to this Agreement, then the Bankruptcy Court shall have exclusive jurisdiction to determine such dispute.

*[remainder intentionally left blank]*

## Notice

Any written notice to be given under this Agreement will be deemed sufficiently served when deposited in the United States mails in a sealed envelope with sufficient postage affixed, registered or certified, with return receipt requested and addressed to:

CORPORATION:
Mr. Joseph O'Dea
at: Core Supplement Technology, Inc.
4645 North Avenue
Oceanside, California 92056

CRA:
Mr. Richard Feferman
at: Corporate Recovery Associates, LLC
3830 Valley Centre Drive, Suite 75-152
San Diego, California 92130

Any party may change the address to which notice to it may be given by written notice to the other as provided in this Agreement.

Executed on January 11, 2018, San Diego County, California.

CORPORATION
Core Supplement Technology, Inc.

By _____
Joseph O'Dea, Chairman of the Board of Directors

CRA
Corporate Recovery Associates, LLC

_____
Richard Feferman, Managing Member

Exhibit 2

CRO Supplemental Declaration

Signed by Judge Margaret M. Mann February 23, 2018

```
1  Stephen C. Hinze (State Bar No. 131787)
   STEPHEN C. HINZE, ATTORNEY AT LAW
2  217 Civic Center Drive, Suite 10
3  Vista, CA 92084
   Tel:  760-945-9353
4  Fax: 760-454-2427
5  Bankruptcy Counsel
   for Debtor in Possession
6
7
```

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No.: 17-06078-MM11 |
| | Chapter 11 |
| CORE SUPPLEMENT TECHNOLOGY, INC. a California Corporation | SUPPLEMENTAL DECLARATION OF RICHARD FEFERMAN IN SUPPORT OF MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING THE DEBTOR'S RETENTION OF RICHARD FEFERMAN AND CORPORATE RECOVERY ASSOCIATES, LLC AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR NUNC PRO TUNC TO DECEMBER 26, 2017; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JOSEPH O'DEA AND RICHARD FEFERMAN IN SUPPORT THEREOF |
| Debtor and Debtor in Possession | |
| | Judge:        Hon. Margaret M. Mann |
| | Dept :         1,  Room 218 |
| | Hearing Date:   February 1, 2018 |
| | Time:          2:30 p.m. |

### DECLARATION OF RICHARD J.  FEFERMAN

I, Richard J. Feferman, declare and state as follows:

1. The matters set forth herein are within my own personal knowledge, except as to those matters testified to upon information and believe and, if called upon as a witness, I could

Page **1** of **4**

1  and would competently testify thereto.  As to those matters testified to under information and
2  belief I reasonably believe them to be true and from trustworthy sources.
3     2.    I submit this Supplemental Declaration in support of the Debtor's Motion for
4  Entry of an Order, Pursuant to Sections 363 and 105(a) of the Bankruptcy Code, Authorizing and
5  Approving the Debtor's Retention of Richard J. Feferman as Chief Restructuring Officer
6  ("CRO") of the Debtor ("Motion").  A true and correct copy of the Engagement Agreement is
7  attached hereto as Exhibit "1" and is incorporated herein by the reference.
8     3.    I am informed and believe that counsel for the United States Trustee ("UST") met
9  and conferred with counsel for the debtor in possession regarding certain provisions of
10 employment in both the Motion (docket #87) and Engagement Agreement attached to my prior
11 Declaration in Support of the Motion (docket #89).
12    4.    The UST's concerns were relayed to me by email.  I reviewed those concerns and
13 by this declaration, agree, notwithstanding anything to the contrary in the Motion, Engagement
14 Agreement and/or supporting declarations, to amend the Engagement Agreement of Corporate
15 Recovery Associates, LLC ("CRA") with Debtor and Debtor in Possession so that it complies
16 with and alleviates all issues raised by the UST, as follows:
17    5.    <u>Additional Disclosure Re: Services of Alan Myers</u>: The UST requested that the
18 services to be performed by Alan Myers be further described to ensure that the services are in
19 support of and ancillary to Mr. Feferman's duties and shown to be neither duplicative nor duties
20 the CRO would ordinarily be expected to perform. In response, I note that the Debtor's former
21 Chief Financial Officer recently resigned and was replaced by the in-house bookkeeper who is
22 unable to fully provide the same of level of support due to personal matters. Mr. Myers is needed
23 to assist the CRO with assessing the problems in the Debtor's accounting department, as well as
24 become familiar with the Debtor's accounting system in order to mitigate disruptions that may
25 occur as a result of the bookkeeper's ill health.  These projects are particularly suited to Mr.
26 Myers who is experienced with accounting systems using software from the Debtor's software

vendor. I will personally supervise Mr. Myers and meet with him to assign him his work and to avoid duplication of services.

6. <u>Service by the CRO at the Pleasure of an Independent Board of Directors</u>: The UST noted the Engagement Agreement contained two provisions that limited the Board's ability to exercise its authority under applicable laws regarding employment and removal of the CRO. Specifically, the UST objected to the provisions that a) only permitted the CRO to be removed by Court order upon a finding of "good cause" for termination (Engagement Agreement at page 6); and, b) requiring the Court to break any Board deadlocks (Engagement Agreement at page 7). I, in my capacity as proposed CRO and on behalf of CRA, agree to strike these two provisions from the Engagement Agreement.

7. <u>Indemnity and Hold Harmless Provisions:</u>   The Engagement Agreement contains various indemnity, hold harmless, and limited liability provisions granted to the CRO, CRA and others.  The UST objected to the broad nature of the indemnity, hold harmless, and limited liability provisions. To address the UST's concerns, I in my capacity as proposed CRO and on behalf of CRA, agree to the following modifications to those provisions (notwithstanding anything to the contrary in the Motion, Engagement Agreement and/or supporting declarations): a) the indemnity and hold harmless provisions are hereby limited to cover solely the CRO and Mr. Myers, who will work in support of the CRO; b) language in the Engagement Agreement at ¶1.d. regarding CRA having "no liability to the Debtor for any acts or omissions of the CRO" is stricken; c) the indemnity and hold harmless provisions shall not extend to conduct that is considered either gross negligence or willful misconduct; d) any indemnity provided under the Engagement Agreement is on the same terms and conditions as provided to the Debtor's other officers and directors under the corporate bylaws, applicable state law, and as permitted under the Debtor's D&O insurance policy, and e) D&O insurance coverage offered to the CRO, including any "tail coverage" referenced in ¶8 of the Engagement shall be on the same terms and conditions offered to other officers and directors of the Debtor.

Page **3** of **4**

Supplement Declaration of Richard Feferman Supporting Motion to Retain Chief Restructuring Officer
17-006078-11 MM11

Signed by Judge Margaret M. Mann February 23, 2018

8. <u>Judicial Review of Compensation Paid and Notice and Opportunity to Object</u>: The UST observed that the Motion at 13: 22-24 provided the CRO and CRA would file monthly reports of tasks performed; but that it was unclear whether those reports included detailed time records and whether the compensation for those services would be subject to judicial review, notice and opportunity to object. The UST requested that any such reports of tasks performed include detailed time sheets of the services performed by the persons providing such services. The UST further requested that all compensation paid to CRA under the Engagement Agreement be subject to Court review, which can be accomplished through a "negative notice" process in the event an objection is filed. The CRO and CRA agree to the reporting requirements and compensation procedures as outlined by the UST. All monthly reports of tasks performed and compensation received shall be properly noticed with opportunity to object, and be subject to final approval by the Court in the event of an objection.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of January 2018 at San Diego, California.

Richard J. Feferman

Page 4 of 4

Supplement Declaration of Richard Feferman Supporting Motion to Retain Chief Restructuring Officer
17-006078-11 MM11

Signed by Judge Margaret M. Mann February 23, 2018