1 | Jason Dennis
jdennis@lynnllp.com
2 | (*Pro hac vice application pending*)
Eliyahu Ness (State Bar No. 311054)
3 | eness@lynnllp.com
LYNN PINKER COX & HURST, LLP
4 | 2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
5 | Telephone: (214) 981-3800
Fax: (214)-981-3839
6 | LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
7 | Dallas, Texas 75201
Telephone: (214) 981-3800
8 | Fax: (214)-981-3839

9 | Attorneys for Corporate Recovery
Associates, LLC and Richard Feferman

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In Re: | **CASE NO: 17-06078-MM7** |
|---|---|
| CORE SUPPLEMENT TECHNOLOGY, INC., | **DECLARATION OF RICHARD BASS IN SUPPORT OF OPPOSITION BY FORMER CHAPTER 11 CHIEF RESTRUCTURING OFFICER RICHARD FEFERMAN TO CHAPTER 7 TRUSTEE RICHARD M KIPPERMAN'S MOTION TO DISGORGE COMPENSATION** |
| Debtor. | **DATE:** May 7, 2020<br>**TIME:** 10:00 a.m.<br>**DEPT:** 1, Room 218<br><br>**Honorable Margaret M. Mann** |

1
DECLARARTION OF RICHARD BASS

I, Richard Bass, declare and state as follows:

1. I was the head and only member of the IT department for Core Supplement Technology, Inc. from July, 2013 until March, 2018. In this capacity, I was deeply involved in the adoption of Microsoft Dynamics GP as the Core Supplement Technology Inc.'s Enterprise Resource Planning (ERP) system. Dynamics GP was used to process all aspects of the company's accounting including General Ledger, Accounts Payable, Accounts Receivable, Bank Reconciliation, Purchasing, Inventory, and Manufacturing. The matters set forth herein are within my own personal knowledge, except as to those matters stated upon information and belief. If called upon as a witness, I could and would testify competently thereto.

2. By the time Chapter 11 was filed, the former CFO, Robert Jeffrey Macartney, aka. Jeff Macartney had left the company, and the accounting department was being run by Kathy Haycook who had originally been hired as a senior accounting clerk.

3. When Richard Feferman was brought on as Chief Reorganization Officer, the accounting department was already in a substantial amount of disarray. I know this because Kathy and I talked frequently, and I was involved in performing certain administrative functions on the ERP system. Together Kathy and I came up with a strategy of how to handle the pre- and post-petition accounts payable in the ERP system.

4. As the weeks post filing went on, Kathy got further and further behind, and her health suffered. She had never handled a bankruptcy before. The additional reporting on top of trying to handle the day-to-day accounting work became overwhelming. At some point, she went out on disability.

5. At this point Nikki McEvers, the head of HR, and I assumed the accounting functions as best we could. Both of us had helped the first CFO, Andrea Kumjian, as accounting clerks. I had extensive knowledge about the ways

manufacturing orders were processed in GP and had done some accounts payable processing. Nikki had done accounts payable and accounts receivable before becoming head of HR.

6. There was a huge challenge in trying to keep the ERP system in sync with what was happening in the real world. Physical inventory counts always showed large shortages compared to what was in the system. On top of that, after Core had filed chapter 11, there was an attempt to outsource a fair amount of the manufacturing to Simpson Labs. This was done in several different ways including:

   a. Providing the blended material to Simpson Labs, and having Simpson Labs do just the packaging.
   b. Providing all of the raw materials to Simpson Labs, and having them do the blending and packaging.
   c. Providing some of the raw materials to Simpson Labs, and having them contribute some of their own, and then blend and package.
   d. Providing none of the materials. Simpson Labs would produce the whole order.

7. To make things even more complicated, the packaging components used in the packaging process could be provided by Core, by Simpson Labs or some combination.

8. Physically this was straight-forward. A phone call would get made by General Manager Joe O'Dea to discuss what was coming from where, some shipments would be done, and the order would get produced. Reflecting this in the system after the fact to handle the proper accounting of costs, however, was a huge challenge.

9. Even more confusing was the fact that we were purchasing some raw goods from Simpson Labs as well as manufacturing services. Also, we would at times sell them some of our raw goods that we had on hand for some of the orders they were producing for us. As a result, a given order could be made up of Core

owned raw materials, Simpson owned raw materials, Core owned packaging materials, and Simpson owned packaging materials.

I declare under penalty of perjury that the forgoing is true and correct.

Executed in the County of San Diego, State of California, on the 3rd day of April, 2020.

*/s/ Richard Bass*

RICHARD BASS