1  GARY E. SLATER (State Bar No. 99141)
   TIMOTHY J. TRUXAW (State Bar No. 106428)
2  **SLATER & TRUXAW, LLP**
   15373 Innovation Drive, Suite 210
3  San Diego, California  92128
   Telephone: (858) 675-0755/Fax: (858) 675-0733
4

5  Attorneys for Trustee, Richard M Kipperman, Chapter 7 Trustee

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10  In Re:                                  | **Case No. 17-06078-MM7**

11                                          | **REPLY TO OPPOSITION OF FORMER**
                                            | **CHAPTER 11 CRO RICHARD**
12  CORE SUPPLEMENT TECHNOLOGY,             | **FEFERMAN TO TRUSTEE'S**
    INC.,                                   | **MOTION TO DISGORGE**
13                                          | **COMPENSATION PAID DURING**
                                            | **CHAPTER 11**
    Debtor.
14
                                            | **DATE:   May 19, 2020**
15                                          | **TIME:   10:00 a.m.**
                                            | **DEPT:   1, Room 218**
16
                                            | **Honorable Margaret M. Mann**
17

18        Richard M Kipperman, Trustee ("Trustee") hereby submits his Reply to the Opposition of

19  Chapter 11 Chief Restructuring Officer, Richard Feferman to the Trustee's motion for disgorgement

20  ("Trustee's Motion"), as follows

21                                  **I.**

22                          **INTRODUCTION**

23        The Trustee's Motion was filed herein on March 3, 2020.  Mr. Feferman retained counsel

24  and requested that the hearing date and briefing deadlines be extended.  The parties stipulated to a

25  date, which the Court approved.  On April 6, 2020, Mr. Feferman filed his opposition ("Opposition")

26  (ECF Nos. 393-397) to the Trustee's Motion.  This is the Trustee's reply thereto.

27  /./.

28  /./.

SLATER & TRUXAW
15373 INNOVATION DRIVE, SUITE 210
SAN DIEGO, CALIFORNIA 92128

**II.**

**UNDER THE CIRCUMSTANCES, IT IS DIFFICULT FOR THE TRUSTEE TO REBUT THE CONTENTIONS OF THE CRO**

In the rather substantial Opposition filed by the CRO, a number of factual issues are raised, and legal arguments asserted, all of which relate to events that occurred **before** the chapter 11 was converted and Mr. Kipperman was appointed the chapter 7 Trustee.  Mr. Kipperman's evaluation of the facts and events that occurred during the chapter 11 can only occur with the benefit of 20-20 hindsight. That evaluation, given the rather substantial Opposition of the CRO, would be tantamount to guesswork.

It is noteworthy that this Court issued an OSC to either dismiss or convert this case on March 9, 2018 (ECF #177) ("OSC"), which scheduled a hearing for March 21, 2018.  That OSC was eight pages in length and chronicled the Court's concerns about certain estate administration issues which existed at the time, e.g., "Gross Mismanagement," "Unauthorized Use of Cash Collateral Substantially Harmful to Creditors," "Bad Faith—Trust Issues" and "Interests of Creditors."  It was those concerns that eventually led the Court to convert this case to a chapter 7.  A true and correct copy of the Court's OSC is attached hereto as Exhibit "A."

Consequently, the Trustee believes that it would best serve this estate's creditors if he relied on the input and guidance of the Court, and possibly, the Office of the United States Trustee, who was fairly active in the case during the chapter 11 administration.

The Trustee has reviewed the CRO's Second Report of Tasks Performed ("Second Report," ECF #397).  It is unclear to the Trustee if the Second Report is a request for additional compensation or is informational only.  Given that this bankruptcy estate has spent a year trying to resolve this matter informally and was put to the task of filing this motion, the Trustee believes that any further compensation to the CRO should be denied.

/./././

/./././

/./././

/./././

SLATER & TRUXAW
15373 INNOVATION DRIVE, SUITE 210
SAN DIEGO, CALIFORNIA 92128

Case No. 17-06078-MM7

1

## III.

## <u>CONCLUSION</u>

Based on the foregoing, the Trustee defers to the Court for an appropriate resolution of the

Trustee's Motion.

Dated: April 13, 2020                    Respectfully submitted,

SLATER & TRUXAW, LLP

By:

  /s/ Gary E. Slater
GARY E. SLATER
TIMOTHY J. TRUXAW,
Attorneys for Richard M Kipperman,
Chapter 7 Trustee

3

Case No. 17-06078-MM7

Order Entered on
March 9, 2018
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**325 West "F" Street, San Diego, CA  92101-6991**

In re

CORE SUPPLEMENT TECHNOLOGY, INC.

Debtor.

BANKRUPTCY NO.:  17-06078-MM11
Date of Hearing:  March 21, 2018
Time of Hearing:  2:00 p.m.

Name of Judge:    Margaret M. Mann

## ORDER TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED OR CONVERTED TO A CASE UNDER CHAPTER 7

TO:  ALL PARTIES:

IT IS HEREBY ORDERED as set forth on the seven (7) continuation pages attached, numbered two (2) through eight (8).

March 9, 2018

Judge, United States Bankruptcy Court

EXHIBIT "A"                                        Page 1 of 8

**Page 2**
**DEBTOR:  CORE SUPPLEMENT TECHNOLOGY, INC.**                    **CASE NO:  17-06078-MM11**

---

The court issues this order ("OSC") to Debtor Core Supplement Technology, Inc. to respond, appear, and show cause before this Court on **March 21, 2018 at 2:00 p.m.**, as to why the court should not dismiss or convert this case to one under Chapter 7, or appoint a trustee. This OSC is brought pursuant to this court's authority under 28 U.S.C. § 157, 11 U.S.C. §§ 105 and 1104(a), and the court's inherent power to monitor the proceedings before it for the benefit of the court, the profession, and the public. *Chambers v. NASCo, Inc.*, 501 U.S. 32, 43, 47 (1991). Under § 1104(a), bankruptcy judges have authority to appoint a trustee sua sponte, even on shortened notice, where there is concern regarding safeguarding assets of the estate, which is the case here. *Fukutomi v. United States Tr. (In re Bibo, Inc.)*, 76 F.3d 256, 258 (9th Cir. 1996).

Section 1112(b)(1) provides:

> [T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ... unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of the estate.

Section 1104(a) requires courts order the appointment of a chapter 11 trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor" as long as "such appointment is in the interests of creditors." Section 1112(b)(4) lays out certain grounds which constitute "cause" under § 1112(b)(1), including (1) substantial or continuing loss or diminution of the estate and an absence of a reasonable likelihood of rehabilitation; (2) gross mismanagement; and (3) unauthorized use of cash collateral substantially harmful to 1 or more creditors.

If cause is established, the court must also determine (1) whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate and (2) whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. § 1112(b)(1), (b)(2); *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 612 (B.A.P. 9th Cir. 2014).

### ***Continuing Losses Without a Likelihood of Rehabilitation***

The first ground is twofold: (1) "continuing loss to . . . the estate and (2) the absence of a reasonable likelihood of rehabilitation." § 1112(b) (4) (A).

The continuing loss element of § 1112(b)(4)(A) may be satisfied by showing a loss that will "materially negatively impact the bankruptcy estate and the interest of creditors" or "dwindling liquidity, or illiquidity resulting in unpaid postpetition debts which usually constitute administrative expenses that will take priority over prepetition claims." *Hassen Imports P'ship v. City of W. Covina (In re Hassen Imports P'ship)*, BAP No. CC-13-1042-KiPaD, 2013 Bankr. LEXIS 3870, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013) (quoting 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (Alan N. Resnick & Henry

Signed by Judge Margaret M. Mann March 9, 2018

**Page 3**
**DEBTOR:  CORE SUPPLEMENT TECHNOLOGY, INC.**                    **CASE NO:  17-06078-MM11**

---

J. Sommer eds., 16th ed. 2012)). "This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief." *Id.* (quoting *In re Schriock Constr., Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994)). In evaluating the continuing loss prong, the court does not accept the financial statements at face value but must "fully evaluate the present condition of a debtor's estate." *Id.* (citing *In re Motel Props., Inc.*, 314 BR. 889, 894 (Bankr. S.D. Ga. 2004)).

For the second prong of § 1112(b)(4)(A), the key inquiry is whether the debtor's business prospects justify continuance of the reorganization effort. *Hassen Imps. P'ship v. City of W. Covina (In re Hassen Imps. P'ship)*, No. CC-13-1019-KiPaD, 2013 Bankr. LEXIS 3870, at *42 (U.S. B.A.P. 9th Cir. Aug. 19, 2013). Generally, "the debtor's prospects will depend on whether the debtor has formulated, or can formulate within a reasonable amount of time, a reasonably detailed business plan." Collier Bankruptcy Manual ¶ 1112.04[5][a][ii] (4th ed. 2017). Indeed, a debtor's failure to timely file a viable plan evidences its inability to be rehabilitated. *In re McClure,* 2016 WL 3769094 at *9 (Bankr. C.D. Cal. July 12, 2016); *In re Harell*, 2013 WL 1403484 at *1 n. 3 (Bankr. S.D. Ga. March 27, 2013) (failure to timely file a plan supports a finding of cause for conversion or dismissal).

The operating reports for this Debtor reflect that it has lost over $400,000 since this case was filed. When Debtor filed bankruptcy, it was in the business of formulating, manufacturing, and distributing nutritional supplements. *See* Decl. O'Dea, Doc. 9-3, ¶ 6. In its December 2017 operating report filed January 24, 2018 (Doc. 169), Debtor advised that "day to day operations [were] very difficult" and that Debtor had "lost many critical personnel." In its January 2018 Operating Report filed March 7, 2018, Debtor advises Debtor's "[i]n house production has been eliminated" and that Debtor "is no longer a manufacturer or developer of supplements." In a declaration filed January 30, 2018 provided in support of Debtor's recently denied sale motion, Debtor's Head of Research and Development and General Manager, Joseph O'Dea, admitted that "Debtor has been unable to achieve profitability" during this case.[1]

In the almost seven months since this case has been filed, Debtor has not filed a plan of reorganization. Instead, Debtor's chief strategy for resolution of this case has been to pursue the sale of assets to Simpson Labs, LLC ("Simpson"). *See* Status Report, Dec. 27, 2017, Doc. 70, pg. 5; Mot. Approve Sale Procedures, Feb. 19, 2018, Doc. 138; Mot. Sell, Feb. 23, 2018, Doc. 151; Decl. Stephen Hinze, Jan. 11, 2018, Doc. 91, ¶ 3 ("Sale

---

[1] In declarations filed at the beginning of this case O'Dea described himself as Debtor's President, however, in a more recently filed declaration he describes himself as the Head of Research and Development and General Manager. *Compare* Decl. O'Dea, Oct. 12, 2018, Doc. 9-3, ¶ 2 *with* Decl. O'Dea, Mar. 8, 2018, Doc. 171, ¶ 1.

Signed by Judge Margaret M. Mann March 9, 2018

**Page 4**
**DEBTOR: CORE SUPPLEMENT TECHNOLOGY, INC.**                    **CASE NO: 17-06078-MM11**

Motion") ("The only reasonable outcome here is a sale of substantially all of the Debtor's assets."). However, the court has denied Debtor's Sale Motion as it was unable to find that Debtor had shown that the estate would receive optimal value for the asset sold to Simpson, that Simpson was a good faith purchaser for value under 11 U.S.C. § 363(m) or that the release Simpson received was "fair and equitable" to creditors or was in the best interests of the estate. During the course of the court's proceedings in connection with Debtor's Sale Motion, Debtor did not identify any other buyer who had made an offer to purchase Debtor's assets or identify any other course of rehabilitation apart from the sale identified.  Instead, Debtor has repeatedly advised the court that a sale must occur imminently as Debtor losses are multiplying. *See* Decl. Stephen Hinze Supp. Ex Part App. Shortened Time, Jan. 11, 2018, Doc. 91, ¶ 4.

As Debtor has ceased operations and the court was unable to approve Debtor's much needed sale of assets, Debtor has incurred continuing losses without a substantial likelihood of rehabilitation sufficient to support a finding of cause under § 1112(b)(4)(A).

Cause is thus established to dismiss or convert the case to Chapter 7.

### ***Gross Mismanagement***

In determining whether a debtor has grossly mismanaged an estate, courts look to how the debtor has managed the estate's assets or business during the bankruptcy case and how they have reported and handled the income and expenses derived from the assets/business. *See, e.g.*, *Kingsway Capital Partners, LLC v. Sosa*, 549 B.R. 897, 905 (N.D. Cal. 2016) (paying personal expenses, ineffective business management, and problematic financial disclosures all constituted gross mismanagement); *Salubrious Pharms., LLC v. Pharmo*, LLC, No. 2:15-cv-07314-CAS, 2016 U.S. Dist. LEXIS 17136, at *9 (C.D. Cal. Feb. 10, 2016) (reporting personal debt as debt of the company constituted gross mismanagement); *In re Prods. Int'l Co.*, 395 B.R. 101, 111 (Bankr. D. Ariz. 2008) (debtor's failure to maintain an effective corporate management team constituted gross mismanagement); *In re ARS Analytical, LLC*, 433 B.R. 848, 858-59 (Bankr. D.N.M. 2010) (debtor had proposed an infeasible plan and was not profitable and evidence showed that it would continue to lose money while it operated its business as debtor-in-possession.)

The court first expressed concerns with Debtor's management of the estate in proceedings held in connection with Debtor's first day motion for an interim order authorizing the use of cash collateral and inventory filed October 12, 2017 (Doc. 9). The court expressed several concerns about Debtor's agreement with Creditor Bank of America, N.A. ("BOA") entered into in connection with that motion at a hearing on November 29, 2017. Debtor then filed a second amended motion for the use of cash collateral. However, in a tentative ruling dated December 18, 2017, the court set forth

Signed by Judge Margaret M. Mann March 9, 2018

**EXHIBIT "A"**                    **Page 4 of 8**

**Page 5**
**DEBTOR:  CORE SUPPLEMENT TECHNOLOGY, INC.**                    **CASE NO:  17-06078-MM11**

---

several reasons why it was unable to grant Debtor's motion. *See* Doc. 54. The tentative ruling also identified several concerns regarding the administration of Debtor's case at that hearing, including that Debtor had paid insider's compensation without seeking court approval as required by the court's local rules and appeared to have entered into an agreement with Simpson without seeking court approval as may have been required under § 363(b)(1).

The court reiterated these concerns at the December 20, 2017 status conference. The court noted that while O'Dea had provided additional testimony regarding the estate's agreement with Simpson, Debtor had failed to identify how much Simpson was paid under the agreement or why court approval was not sought. Debtor has still failed to answer these questions, and the recently appointed Chief Restructuring Officer, Richard Feferman ("CRO") recently gave testimony that was inconsistent with other sworn statements before the court. The court noted that Debtor's October and November operating reports indicated that Simpson had received $160,000, which was slightly less than half of the $334,000 in losses Debtor had incurred in the first two months of the case. This problem has only been exacerbated since then. Simpson has received $478,000 when Debtor's losses through January exceed of $400,000.

The court had other concerns addressed at the hearing with Debtor's failure to comply with the cash collateral motion, and its acceptance of deposits from customers when Debtor's ability to fulfill orders moving forward was questionable. Indeed, the court warned Debtor that it did not appear appropriate to use such deposits, which would add to the administrative costs of the estate, to fund operating shortfalls. Debtor's operating shortfalls have continued to mount. In December, Debtor had proposed a sale of substantially all its assets for $2.2 million to Simpson which might not be sufficient to cover secured claims and administrative expenses. The court was also concerned that Debtor was becoming increasingly insolvent. While the court considered issuing an order show to cause under §§ 1104(b)(1) and 1112(b), it deferred doing so since the terms of its agreement with Simpson had not been finalized and the record was not yet clear whether Debtor's use of BOA's cash collateral was beyond that required to prevent irreparable harm. The United States Trustee agreed with some of these concerns and suggested the appointment of an examiner.

When the CRO was appointed on February 23, 2018, (Doc. 87), effective December 26, 2017, he became solely responsible for managing Debtor's business and financial affairs and supervising the administration of this Chapter 11 case, including the preparation of various schedules and reporting. *See* Doc. 89, pg. 13-14. In a declaration filed in support of Debtor's motion to appoint the CRO, he attested that "[s]ince being retained by the Debtor" he had "acquired substantial knowledge of the Debtor's financial affairs and business."

Signed by Judge Margaret M. Mann March 9, 2018

**Page 6**
**DEBTOR:  CORE SUPPLEMENT TECHNOLOGY, INC.**               **CASE NO:  17-06078-MM11**

---

Testimony recently admitted by the CRO, and in other declarations submitted in support of Debtor's Sale Motion, indicates that the CRO has been unable to fully discharge his responsibilities. The testimony was that Debtor had "been unable to adequately fund its accounting department" and that the bankruptcy had "deteriorated due to the loss of support staff." CRO Decl., Doc. 155, ¶ 3. While the CRO employed Alan Myers to assist with its accounting, Debtor was unable to identify an employee familiar with Debtor's records and accounting software who could provide Myers and the CRO financial data. *Id.* at ¶¶ 5-7.  The CRO was unable to answer questions about operating reports filed in this case, including Debtor's January 2018 Operating Report filed after he was appointed at the March 8, 2018 hearing on the Sale Motion. The CRO testified that he could not verify the accuracy of any operating report filed in this case, and the information he was provided by Debtors' personnel conflicted with the operating reports. As one example, the operating reports reflected that Simpson had been paid only $15,000 for raw materials during the administration of this case, but the CRO testified Simpson had been paid over $200,000. The CRO also could not determine how much Simpson had been paid during the case for outsourcing under an undisclosed prepetition agreement with Debtor, yet opined without foundation that the relationship was profitable, even when the operating reports reflected otherwise.

Like the debtor in *Kingsway Capital Partners*, 549 B.R. at 905, the record indicates Debtor has provided inaccurate financial disclosures in this case, despite the appointment of a CRO to assist its management. Like the debtor in *ARS Analytical,* 433 B.R. at 858-59, the estate will continue to lose money while the debtor-in-possession continues an infeasible strategy of pursuing a sale with Simpson. Indeed, as the court indicated in its order denying Debtor's Sale Motion, the record indicates that Simpson has agreed to employ O'Dea, at least during the transition, and that Debtor's pursuit of a sale with Simpson may be influenced by O'Dea's relationship with Simpson.

In addition, the court's concerns regarding Debtor's use of cash deposits to cover operating expenses identified at the December 20, 2017 hearing has continued. Debtor's January 2018 operating report indicates Debtor received $252,693.45 in deposits in January, despite that Debtor's continued ability to manufacture was questionable at best. In addition, at the final hearing on Debtor's Sale Motion, the CRO testified the Debtor currently held at least $300,000 in deposits that would need to be returned if and when Debtor's accounts receivable are sold.

These facts indicate that Debtor has grossly mismanaged this estate sufficient to support a finding of "cause" under § 1112(b)(4)(B), and the CRO's role has not resolved the problem.

Signed by Judge Margaret M. Mann March 9, 2018

**Page 7**
**DEBTOR:  CORE SUPPLEMENT TECHNOLOGY, INC.**                    **CASE NO:  17-06078-MM11**

---

### *Unauthorized Use of Cash Collateral Substantially Harmful to Creditors*

Section 1112(b)(4)(D) provides that "cause" under § 1112(b)(1) includes "unauthorized use of cash collateral substantially harmful to one or more creditors." *See, e.g.*, *In re Bowers Inv. Co., LLC*, 553 B.R. 762, 773 (Bankr. D. Alaska 2016) (debtor's failure to account for use of cash collateral supported a finding for cause under § 1112(b)(4)(D)); *In re Premier Golf Props., LP*, 564 B.R. 710, 726 (Bankr. S.D. Cal. 2016) (debtor's sale of assets outside the ordinary course of business and use of the proceeds without court authorization constituted cause under § 1112(b)(4)(D)).

Debtor's proposed budget filed in support of its cash collateral motion provided for the payment of $65,000 monthly for "outsourcing" and this is the same amount allocated for "outsourcing" in Debtor's most recently filed budget approved by the court on January 29, 2018. *See* Mot. Or. Authorizing Cash Collateral, Ex. B., Oct. 12, 2017, Doc. 9-2; Or. Grant Cash Collateral Stip., Jan. 27, 2018, Doc. 110, pg. 2. However, Debtor's operating reports indicate Debtor well outspent these amounts. It paid Simpson $138,378.12 for outsourcing in November as well as $131,784.22 for outsourcing in December and $142,541.93 for outsourcing in January. Debtor's financial disclosures also indicate that additional misuses of cash collateral as Debtor's CRO testified Debtor may have paid Simpson over $200,000 for raw materials, but Debtor's cash collateral budgets provide for only $40,000 per month for raw materials. Debtor's ramping up its unprofitable production was harmful to the estate since this case may well be administratively insolvent.

Debtor's payments to Simpson, pursuant to an undisclosed agreement in an amount far exceeding any budget Debtor has provided the court, constitutes cause under § 1112(b)(4)(D).

### *Bad Faith – Trust issues*

Good faith is required in the both the commencement and in the prosecution of a chapter 11 case. For this reason, "the lack thereof constitutes 'cause' for dismissal under § 1112(b)(1)." *In re Mense*, 509 B.R. 269, 276 (Bankr. C.D. Cal. 2014) (citing *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994)). While there is a multi-factor test to determine whether a case is a bad faith filing (*see St. Paul Self Storage Ltd. Partnership v. Port Authority of St. Paul (In re St. Paul Self Storage Ltd. Partnership)*, 185 B.R. 580 (9th Cir. BAP 1995) (five factors) and *In re Stolrow's, Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. Mar. 21, 1988) (considering eight factors)), bad faith can also exist whether there is evidence of "an intent to abuse the judicial process and the purposes of the reorganization provisions." *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1048 (9th Cir. 2013). Thus, in *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 911-12 (B.A.P. 9th Cir. 2011), the B.A.P. upheld a bankruptcy court's finding that a debtor acted in bad faith, in part where the court stated

Signed by Judge Margaret M. Mann March 9, 2018

EXHIBIT "A"                    **Page 7 of 8**

**Page 8**
**DEBTOR:  CORE SUPPLEMENT TECHNOLOGY, INC.**                    **CASE NO:  17-06078-MM11**

in its ruling that it could not trust the financial information the debtors provided. The B.A.P. noted that the bankruptcy court had explained to the debtors in a status conference on the motion to dismiss that they had "to get to the point where everybody trusts and understands the numbers" so that everyone understood where "the case is going" and "why it's going there." *Id.* at 911 n. 9.

Neither the court nor the CRO can "trust the numbers" here.

### Interests of Creditors

If the court finds cause exists after a hearing on this OSC, it must dismiss, convert the case, or appoint a trustee or examiner, whichever is in the best interests of creditors. *Sullivan v. Harnisch (In re Sullivan),* 522 B.R. 604, 613 (B.A.P. 9th Cir. 2014) ("[T]he bankruptcy court had an independent obligation under § 1112 to consider what would happen to all creditors on dismissal and, in light of its analysis, whether dismissal or conversion would be in the best interest of all creditors, not just the largest and most vocal creditor.").

To consider the interests of creditors, the court will notice this OSC to all of them and invite responses. The court also requests a response from the U.S. Trustee. There is approximately $1.2 million in cash in the estate and almost $800,000 of accounts receivable that could be allocated to creditors. Creditors might also be benefited by pursuit of claims against insiders or Simpson. Dismissal of the case would only benefit the secured creditors, but that might be the only feasible outcome. The lien rights of secured creditors are subject to adjustment in bankruptcy due to the estate's valuation rights under 11 U.S.C. §506(a), and avoidance rights under 11 U.S.C. §§ 544 to 550 which might generate value to administrative and unsecured creditors in a conversion as well.

### Conclusion and Order

For these reasons, the court finds the above facts constitute cause. All parties are ordered to appear on **March 21, 2018 at 2:00 p.m.** in Department No. 1, Room 218, Jacob Weinberger United States Courthouse, located at 325 West F Street, San Diego, CA 92101-6991, and show cause why this case should not be dismissed or converted to a case under Chapter 7.

Responses to this OSC are due no later than **March 15, 2018.**

IT IS SO ORDERED.

Signed by Judge Margaret M. Mann March 9, 2018

EXHIBIT "A"                    **Page 8 of 8**